UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

_____
                                        )
MELINDA WILSON                          )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )     Civil Action No. 05-CV-73
                                        )
AMERICAN POSTAL WORKERS                 )
UNION, DELAWARE AREA LOCAL,             )
AFL-CIO; and UNITED STATES POSTAL       )
SERVICE, an independent establishment of)
the Executive Branch of the Government  )
of the United States of America         )
                                        )
            Defendants.                 )
_____ )

**BRIEF OF THE WILMINGTON DELAWARE/MALCOLM T. SMITH
AREA LOCAL, AMERICAN POSTAL WORKERS UNION, AFL-CIO
IN SUPPORT OF SUMMARY JUDGMENT**


LAW OFFICE JOSEPH J. RHOADES      O'DONNELL, SCHWARTZ & ANDERSON,  P.C.

Dale Bowers                       Peter J. Leff
Delaware Bar No. 3932             DC Bar # 457476
1225 King Street, Suite 1200      1300 L Street NW Suite 1200
Wilmington, DE 19801              Washington, DC 20005-4126
(302) 427-9500/FAX  (302) 427-9509 (202)898-1707/FAX(202)682-9276
dale.bowers@rhoadeslegal.com      pleff@odsalaw.com


Attorneys for the Wilmington Delaware/Malcolm T. Smith
Area Local, American Postal Workers Union, AFL-CIO


**February 23, 2006**

# TABLE OF CONTENTS

Statement of the Nature and Stage of the Proceeding . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      A.    Melinda Wilson Is Suspended from the Postal Service for Working a Second Job that Requires Her to Perform Job Duties Outside of the Medical Restrictions that She Submitted to the Postal Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      B.    The Postal Service Removes Wilson from Employment Upon Learning that Wilson Worked at Boscov's on Several Days when She Utilized her Postal Service Sick Leave . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      C.    Wilson Informs the Union that She Received the Notice of Removal on April 6, 2004 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      D.    The Union Vigorously Pursues the Grievance to Arbitration, but the Arbitrator Denies the Grievance as Being Untimely Filed . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

      A.    Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

      B.    The Applicable Legal Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

      C.    The Duty of Fair Representative . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

      D.    Wilson Had the Obligation to File a Grievance at Step 1 Challenging the Notice of Removal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

      E.    Wilson Is At Fault For the Grievance Being Untimely Filed as She Informed the Union that She Received the Notice of Removal on April 6, 2004 . . . . . . . . . . 24

      F.    Even if Wilson's Testimony that She Informed the Union that She Received the Notice of Removal by First Class Mail on March 30 or 31, 2004 Is Credited, the Union's Determination that the Date She Signed for the Certified Letter Started Tolling the Time Limits for Filing the Grievance Was No More than Mere Negligence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

G.    The Postal Service's Removal of Wilson was Not in Violation of the National Agreement, as the Postal Service Had Just Cause to Remove Wilson  . . . . . . . . 30

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

## TABLE OF AUTHORITIES

Abernathy v. USPS, 740 F.2d 612 (8th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Air Line Pilots Association v. O'Neill, 499 U.S. 65 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . 22, 27

American Postal Workers Union, AFL-CIO v. United States Postal Service, 823 F.2d 466 (11th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Bacashihua v. United States Postal Service, 859 F.2d 402 (6th Cir. 1988) . . . . . . . . . . . . . . . 21

Bazarte v. United Transportation Union, 429 F.2d 868 (3d Cir. 1970) . . . . . . . . . . . 2, 22, 23, 28

Bowen v. United States Postal Service, 459 U.S. 212 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Carino v. Stefan, 376 F.3d 156 (3d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 22, 28

Carter v. United Food & Commercial Workers, 963 F.2d 1078 (8th Cir. 1992) . . . . . . . . . . . . 22

Columbia Local, APWU v. Bolger, 621 F.2d 615 (4th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . 21

Corbin v. Runyon, 188 F.3d 518 (table), 1999 WL 590749 (10th Cir. 1999) . . . . . . . . . . . . . . 21

DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151 (1983) . . . . . . . . . . . . . . . . . . . . . . 2, 20, 21

Findley v. Jones Motor Freight, 639 F.2d 953 (3d Cir. 1981) . . . . . . . . . . . . 2, 20, 21, 22, 23, 28

Hines v. Anchor Motor Freight, Inc., 424 U.S. 554 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Humphrey v. Moore, 375 U.S. 335 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

IBEW v. Foust, 442 U.S. 42 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 23

Johnson v. United States Postal Service, 756 F.2d 1461 (9th Cir. 1985) . . . . . . . . . . . . . . . . . 21

Lawson v. Truck Drivers, Chauffeurs & Helpers, 698 F.2d 250 (6th Cir.) . . . . . . . . . . . . . . . . 21

McNair v. United States Postal Service, 768 F.2d 730 (5th Cir. 1985) . . . . . . . . . . . . . . . . . . . 21

Melendy v. USPS, 589 F.2d 256 (7th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Miller v. USPS, 985 F.2d 9 (1st Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

NALC v. Sombrotto, 449 F.2d 915 (2d Cir. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

NALC v. USPS, 590 F.2d 1171 (D.C. Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Riley v. Letter Carriers Local No. 380, 668 F.2d 224 (3d Cir. 1981) . . . . . . . . . . 2, 3, 21, 22, 28

Roeder v. American Postal Workers Union, AFL-CIO, 180 F.3d 733 (6th Cir. 1999) . . . . . . . 23

United Parcel Service, Inc. v. Mitchell, 451 U.S. 56 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Vaca v. Sipes, 386 U.S. 171 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 20, 21, 23

Woosley v. Avco Corp., 944 F.2d 313 (6th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

**Statutes**

29 U.S.C. §185(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

39 U.S.C. §1208(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

iv

**STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING**

On February 10, 2005, Plaintiff Melinda Wilson filed a hybrid breach of contract/breach of the duty of fair representation claim against her former employer, the United States Postal Service ("Postal Service"), and her former union, the Wilmington Delaware/Malcolm T. Smith Area Local, American Postal Workers Union, AFL-CIO ("Union"). Wilson's lawsuit arises out of her removal from Postal Service employment and the Union's subsequent failure to prevail at arbitration on the grievance challenging that removal.

As discovery is now complete, the Union moves for summary judgment, in accordance with Rule 56 of the Federal Rules of Civil Procedure, on the ground that there are no genuine issues of material fact and the Union is entitled to judgment as a matter of law.

## SUMMARY OF ARGUMENT

1.      Melinda Wilson commenced a lawsuit against the Wilmington Delaware/Malcolm T. Smith Area Local, American Postal Workers Union, AFL-CIO ("Union") and the United States Postal Service ("Postal Service") alleging that the Postal Service violated the terms of the applicable collective bargaining agreement by terminating her and that the Union violated its duty to fairly represent her in the grievance and arbitration process.  In order to prevail on this cause of action, Wilson must prove <u>both</u> that (1) the Union breached its duty of fair representation, and (2) the Postal Service violated the terms of its Agreement with the Union. <u>DelCostello v. Int'l Bhd. of Teamsters</u>, 462 U.S. 151, 165 (1983); <u>Vaca v. Sipes</u>, 386 U.S. 171, 185-186 (1967); <u>United Parcel Service, Inc. v. Mitchell</u>, 451 U.S. 56, 66-67 (1981); <u>Findley v. Jones Motor Freight</u>, 639 F.2d 953, 957-58 (3d Cir. 1981).

2.      Wilson claims that the Union breached the duty of fair representation by untimely filing the grievance challenging her removal from the Postal Service.

3.      A union breaches its duty of fair representation only if its conduct is arbitrary, discriminatory, or in bad faith. <u>Vaca v. Sipes</u>, 386 U.S. 171, 190 (1967); <u>Riley v. Letter Carriers Local No. 380</u>, 668 F.2d 224, 228 (3d Cir. 1981); <u>Findley</u>, 639 F.2d at 957.

4.      Mere ineptitude, simple negligence or poor judgment in the presentation of a grievance by a union is insufficient to establish a breach of the duty of fair representation. <u>Riley v. Letter Carriers Local No. 380</u>, 668 F.2d 224, 228-229 (3d Cir. 1981); <u>Findley</u>, 639 F.2d at 959; <u>Bazarte v. United Transportation Union</u>, 429 F.2d 868, 872 (3d Cir. 1970); see also <u>Carino v. Stefan</u>, 376 F.3d 156, 161 (3d Cir. 2004).

5.      A grievant who finds her grievance time barred as a result of negligence of the union in failing to timely file the grievance does not have a breach of the duty of fair representation claim against the union. <u>Riley</u>, 668 F.2d at 230 n. 12. Accordingly, a union is protected from liability even if it acts on its mistaken belief, so long as it acted in good faith. <u>Vaca v. Sipes</u>, <u>supra.</u>; <u>IBEW v. Foust</u>, 442 U.S. 42, 51 (1979).

6.      Under the applicable collective bargaining agreement, the Union has fourteen days to file a grievance after the grievant or the Union learns or reasonably should have learned of the cause of the grievance.

7.      Wilson informed the Union that she had received the Notice of Removal on April 6, 2004. The Union filed the grievance on April 16, 2004. Wilson did not tell the Union that she had received the Notice of Removal by first class mail on March 31, 2004. Thus, the fault of not filing a timely grievance was Wilson's fault, not the Union's fault.

8.      Even if Wilson had told the Union that she had received the Notice of Removal by first class mail on March 31, 2004 and by Certified Mail on April 6, 2004, it would not have been a breach of the duty of fair representation for the Union to have determined that the time limits for filing the grievance began to run on the date that Wilson verified receipt of the Notice of Removal by signing for the Certified Mail letter, as opposed to the indeterminate date of when a first class letter is received. At most, the Union made a good faith, but inept, poor or negligent judgment.

9.      Additionally, the Postal Service had cause to remove Wilson as she was caught working a second job on the same days that she was in a sick leave status at the Postal Service, in direct contradiction to postal Service regulations.

3

## STATEMENT OF FACTS

A.  <u>Melinda Wilson Is Suspended from the Postal Service for Working a Second Job that Requires Her to Perform Job Duties Outside of the Medical Restrictions that She Submitted to the Postal Service</u>.

Melinda Wilson was hired by the United States Postal Service ("Postal Service") on April 25, 1985, as a Letter Sorter Machine operator at the Wilmington, Delaware Processing & Distribution Center. (Wilson Tr. at 5, 7; Apx. at A-3, A-4).  She was a member of the Wilmington Delaware/Malcolm T. Smith Area Local, American Postal Workers Union, AFL-CIO ("Union"). (Wilson Tr. at 6; Apx. at A-4).[1]  Wilson served as a 204-B Supervisor, or acting supervisor, from November 2002 through June 2003. (Wilson Tr. at 10-11; Apx. at A-5).

In December 2002, Wilson submitted documentation from her medical provider to the Postal Service listing several work restrictions, including restrictions on lifting, standing, kneeling, bending, twisting and climbing, the need to start work no later than 9:30 a.m. and the need for a chair with arm rests.[2] (Wilson Tr. at 68-69 and Exhibit 19; Apx. at A-19, A-74).  The Postal Service accommodated Wilson's medical restrictions by placing her in a limited-duty Manual Mail Sorter position that did not require her to stand, to lift more than ten pounds, or to engage in repetitive motion, and that permitted her to work only the day shift. (Wilson Tr. at 69-70; Apx. at A-19, A-20).

---

[1]    Wilson was a steward for the Union, appointed by President Steve Collins, from May or June 2003 until March 2004. (Wilson Tr. at 11-12; Apx. at A-5).

[2]    Wilson's physician, Dr. Seth Ivins, restricted Wilson to lifting 11-20 lbs. to one hour a day, no lifting above 20 lbs., no pushing or pulling, no standing, no climbing, no kneeling, one hour a day of bending stooping or twisting, no keying and no reaching above her shoulders. (Wilson Tr. at 68-69 and Exhibit 19; Apx. at A-19, A-74).

Wilson held this position from late 2002 until her removal on March 10, 2004. (Wilson Tr. at 9-10; Apx. at A-4, A-5).[3]

On September 1, 2003, Wilson applied for a second job at Boscov's Department Store. (Wilson Tr. at 70-71 and Exhibit 20; Apx. at A-20, A-87).  On her Boscov's employment application, Wilson indicated that she could work from 3:30 p.m. to closing time and that she had no issues with the physical demands of the job of standing, stooping, bending, reaching, climbing, twisting/turning or lifting/carrying (up to 50 pounds). (Wilson Tr. at 71-73 and Exhibit 20; Apx. at A-20, A-87).  Wilson's Boscov job required her to stand throughout her shift and to work evening hours. (Wilson Tr. at 78-79 and Exhibit 20; Apx. at A-22, A-87).  Wilson never informed the Postal Service that she was no longer under the medical restrictions of having to work the day shift only, no standing and having to work while sitting in a chair with arm rests. (Wilson Tr. at 73, 78-81; Apx. at A-20, A-22).

In November or December of 2003, one of Wilson's Postal supervisors, Linda Drummer, went shopping at Boscov's and saw Wilson working as a sales clerk. (Drummer Tr. at 5-7; Apx. at A-148, A-149).  Drummer mentioned to her supervisor, Manager of Distribution Operations Carla Van Istendal, that she saw Wilson working at Boscov's. (Drummer Tr. at 8; Van Istendal Tr. at 4-5, 12; Apx. at A-149, A-111, A-113).  Van Istendal asked Drummer whether Wilson was working outside of the medical restrictions that she had provided to the Postal Service and asked her to

---

[3]    This was the second time that the Postal Service accommodated Wilson for an on-the-job injury.  The first occasion was when the Postal Service moved Wilson into a limited-duty position of Manual Mail Sorter from November 1992 through June 2002. (Wilson Tr. at 7-8; Apx. at A-4).

5

investigate whether Wilson was working outside of those medical restrictions. (Drummer Tr. at 8-9; Van Istendal Tr. at 12; Apx. at A-149, A-113).

On December 24, 2003, Van Istendal held a meeting with Wilson to inquire as to why she was performing work at Boscov's contrary to the medical restrictions that she had provided to the Postal Service. (Van Istendal Tr. at 13-14; Apx. at A-113, A-114). Wilson refused to answer Van Istendal's questions and stated that her medical restrictions were for her Postal Service work only. (Van Istendal Tr. at 16-17; Apx. at A-114). As a result of that meeting, Van Istendal sent Wilson home and suspended her until she provided updated medical documentation, because her medical restrictions on file with the Postal Service conflicted with the job duties she was performing at her non-Postal job. (Van Istendal Tr. at 20-21; Keen Tr. at 16-17; Apx. at A-115, A-134).

The Union grieved the Postal Service's decision to suspend Wilson pending updated medical information. (Keen Tr. at 17-18; Wilson Tr. at 47 and Exhibit 8; Apx. at A-134, A-135, A-14, A-54). The grievance is pending arbitration. (Keen Tr. at 20-21; Apx. at A-135).[4]

Wilson submitted additional medical documentation to the Postal Service after her suspension began, and she was ordered to return to work, and did return to work at the Postal Service, in February 2004. (Drummer Tr. at 26; Van Istendal Tr. at 30-31; Keen Tr. at 21-22; Apx. at A-151, A-117, A-135, A-136).

---

[4]    Grievances challenging removals take scheduling priority over contract interpretation grievances and grievances challenging the issuance of lower levels of discipline. (Keen Tr. at 41; Apx. at A-140).

B.     The Postal Service Removes Wilson from Employment Upon Learning that Wilson Worked at Boscov's on Several Days when She Utilized her Postal Service Sick Leave.

After the December 24, 2003 meeting in which Wilson did not provide a legitimate explanation for why she was working a second job outside of her Postal Service medical restrictions, Van Istendal initiated a Postal Inspector investigation of Wilson's outside employment. (Van Istendal Tr. at 26 and Exhibit 1; Keen Tr. at 7-8; Apx. at A-116, A-121, A-133).  The memorandum prepared by the Postal Inspectors indicated that on a number of occasions Wilson worked her second job at Boscov's on the same days that she took paid sick leave from the Postal Service. (Van Istendal Tr. at 9-10, 56-57 and Exhibit 1; Drummer Tr. at 18-19; Keen Tr. at 37-40 and Exhibits 7-8; Wilson Tr. at 64-67 and Exhibits 13-18; Apx. at A-112, A-113, A-120, A-121, A-150, A-139, A-140, A-144, A-155, A-18, A-19, A-68-73).

Based on the information in the Postal Inspectors' memorandum, Drummer and Van Istendal held a day-in-court or pre-disciplinary interview with Wilson on March 10, 2004. (Drummer Tr. at 28, 31; Apx. at A-151, A-152).  Wilson was represented by a Union steward during the pre-disciplinary interview. (Wilson Tr. at 14-15; Drummer Tr. at 33; Apx. at A-6, A-152).  At the end of the pre-disciplinary interview, Wilson was escorted out of the building and informed that the Postal Service would get in touch with her. (Drummer Tr. at 34; Apx. at A-153).

As Postal Service regulations prohibit an employee from being in a sick leave status while engaging in gainful employment outside of the Postal Service without prior approval from an appropriate official, the Postal Service made the decision to remove Wilson from Postal employment. (Van Istendal Tr. at 9; Drummer Tr. at 35; Apx. at A-112, A-153).  On March 16,

7

2004, Drummer prepared a Request for Disciplinary Action form requesting that Wilson be removed from employment, and Van Instendal concurred with the decision to remove Wilson on the next day. (Van Istendal Tr. at 49-51 and Exhibit 5; Apx. at A-118, A-119, A-129).

The signed Request for Disciplinary Action form and documentation supporting the removal were sent to Andrew Keen, the Postal Service's Manager, Labor Relations for the State of Delaware and the southern half of New Jersey, for preparation of the Notice of Removal. (Keen Tr. at 4-5, 28-29; Apx. at A-132, A-137). Keen prepared the Wilson Notice of Removal and sent it back to Wilmington for signature by Drummer and Van Istendal. (Van Istendal Tr. at 51-52; Drummer Tr. at 37, 52; Apx. at A-119, A-153, A-154).[5]

---

[5]    The Notice of Removal cited six incidents in November and December 2003 where Wilson took sick leave from the Postal Service and worked at Boscov's on the same day, including one incident when Wilson took sick leave from the Postal Service at 3:00 p.m. and went to work at Boscov's at 3:18 p.m., before her Postal Service shift was scheduled to end. The Notice of Removal cited that Wilson's conduct violated the following provisions of the Employee and Labor Relations Manual ("ELM"):

513.312 Restriction An employee who is in sick leave status may not engage in any gainful employment unless prior approval has been granted by appropriate authority (see 661, Code of Ethical Conduct).

661.42 Conflicts of Interest – Employment An employee may not engage in outside employment or other outside activity that is not compatible with the full and proper discharge of the duties and responsibilities of Postal Service employment. No employee will engage in outside employment which impairs mental or physical ability to perform Postal Service duties and responsibilities acceptably.

662.2 Behavior and Personal Habits Employees are expected to conduct themselves during and outside of working hours in a manner which reflects favorably upon the Postal Service. Although it is not the policy of the Postal Service to interfere with the private lives of employees, it does require that postal personnel be honest, reliable, trustworthy, courteous, and of good character and reputation. Employees are expected to maintain satisfactory personal habits so as

On March 29, 2004, the Notice of Removal was mailed to Wilson by first class and certified mail. (Van Istendal Tr. at 31-32, 53; Drummer at 52-53; Keen Tr. at 46-47, 50; Apx. at A-117, A-119, A-154, A-142, A-143).  The Union was not notified that the Notice of Removal had been mailed to Wilson. (Van Istendal Tr. at 33, 54; Keen Tr. at 50; Apx. at A-117, A-120).

C.    Wilson Informs the Union that She Received the Notice of Removal on April 6, 2004.

Wilson learned that she was being removed from the Postal Service when she received the Notice of Removal, dated March 24, 2004, by first class mail on March 30 or 31, 2004. (Wilson Tr. at 15-16 and Exhibit 1; Apx. at A-6, A-25).  Wilson received notice that she had a Certified Mail letter waiting for her on the same day that she received the Notice of Removal by first class mail. (Wilson Tr. at 16-17; Apx. at A-6).  Wilson did not pick-up the Certified Mail Notice of Removal until April 6, 2004, because she was separated from her husband, did not have a car and was not staying at her house. (Wilson Tr. at 17-18; Apx. at A-6, A-7).

Article 15, Section 2(a) of the Collective Bargaining Agreement between the American Postal Workers Union, AFL-CIO and the United States Postal Service ("National Agreement") states in relevant part:

> Any employee who feels aggrieved **must** discuss the grievance with the employee's immediate supervisor within **fourteen (14) days** of the date on which the employee or the Union first learned or may reasonably have been expected to have learned of its cause. . . .  The Union also may initiate a grievance at Step 1 within 14

---

not to be obnoxious or offensive to other persons or to create unpleasant working conditions. (Wilson Tr. at 15-16 and Exhibit 1; Keen Tr. at 33-35; Apx. at A-6, A-25, A-138, A-139).

days of the date the Union first became aware of (or reasonably should have become aware of) the facts giving rise to the grievance. (Emphasis added).

(Wilson Tr. at 30 and Exhibit 4; Apx. at A-10, A-39).

Wilson believed that her grievance needed to be filed fourteen days after her receipt of the Notice of Removal by Certified Mail, not fourteen days after receipt of the Notice of Removal by first class mail. (Wilson Tr. at 19-21; Apx. at A-7).

On April 6, 2004, the day that Wilson picked up the Notice of Removal that had been sent to her by Certified Mail, Wilson contacted Steve Collins, the President of the Union, and notified him of the Notice of Removal. (Wilson Tr. at 19; Apx. at A-7). Collins advised Wilson to come into the office right away to begin the process of filing the grievance. Id. Wilson met Collins at the Union office on April 6th, and Collins took a statement from Wilson to begin the Step 1 grievance process. Id. While meeting with Collins on April 6th, Wilson wrote out a statement that stated in the first paragraph, "I, Melinda Wilson, am grieving the fact that I was issued a letter of removal dated March 24, 2004 that I received on April 6, 2004. The removal is for the charge of improper conduct." (Wilson Tr. at 23-24 and Exhibit 2; Apx. at A-8, A-28). At their meeting on April 6th, Wilson does not recall telling Collins that she received the Notice of Removal by first class mail on March 30th or 31st. (Wilson Tr. at 24; Apx. at A-8). Collins had no knowledge that Wilson had received the Notice of Removal prior to April 6, 2004. (Collins Tr. at 14-22, 39, 46-47; Apx. at A-93, A-94, A-95, A-99, A-101). Based on what Wilson told him and wrote in her statement, Collins believed that Wilson first received the Notice of Removal on April 6, 2004, and that the fourteen day time limit for filing a grievance challenging that Notice of Removal began on April 6, 2004. Id.

10

Wilson offered conflicting testimony over whether or not she informed the Union that she had received the Notice of Removal prior to April 6, 2004.  At first, in response to a question as to why she did not inform the Union that she had received the Notice of Removal by first class mail prior to receipt of the Certified Mail letter on April 6th, Wilson stated:

> I believe that I did note – well, attempt to notify by leaving a message at the union office, but if I'm not mistaken, during the time – the end of that month – that was the weekend, I believe, if I'm not mistaken, and as soon as I could get in touch with Steve at the union office was when I did on April – it could have been before that, but he might have been just available on April 6 or that Monday, I believe.  That was a Monday.  And so as soon as I was able to get in touch with him to advise me on what to do next is as soon as I could.

(Wilson Tr. at 21-22; Apx. at A-7, A-8).

Initially, Wilson could not remember if she left a message for Collins about the Notice of Removal prior to April 6th:

> Q.    Is it accurate that you did not talk to the Union about your receipt of a notice of removal until April 6?
>
> A.    I believe that I tried leaving a message, but the office was closed or no one was there, I believe.
>
> Q.    Did you leave a message or just try to call them?
>
> A.    I don't really recall, but if I called, I probably did leave a message.  I'm not exactly sure.  But, this was important, so I'm sure that I would have left a message.

(Wilson Tr. at 22; Apx. at A-8).  Wilson then testified, "[I]f I called the Union, I didn't get an answer or I left a message." (Wilson Tr. at 26-27; Apx. at A-9).

Then, Wilson began changing her testimony and claiming that she did leave a message for the Union about her receipt of the Notice of Removal prior to April 6th.  She stated:

11

> I do believe that I left a message during the time of – that time before the 6th, and in letting him know that.  But he may have been out of town.  It was something going on to where he wasn't in the office until that Monday or whatever day the 6th was.  He wasn't there.  So I believe that I left a message on his cell phone and/or the office phone.

(Wilson Tr. at 29; Apx. at A-9).

Next, Wilson changed her testimony again and claimed that she spoke with Collins about her receipt of the Notice of Removal on March 30th or 31st prior to April 6, 2004.

Q.    And in fact, is it correct you're not exactly sure whether or not you ever notified the Union that you picked up the first class mail letter on March 30 or 31?

A.    I'm almost certain that I spoke with Steve and/or left a message because I recalled Steve saying, Well, we have 14 days.  Just be careful, you have 14 days.  So you need to go ahead and sign for the letter.  You need to go and get it and sign for it because you have 14 days.  And you don't want to mess up because I've had a case where somebody didn't pick up their stuff and  they still went through.  So pick the letter up.  So, yes, I did tell him that I got the letter – but on the – by phone.

Q.    So you actually had a telephone conversation with Steve Collins before April 6?

A.    Yes.  Now it's coming back to me, yes.

Q.    And do you recall the date that you had this conversation?

A.    Cannot recall the date.

Q.    So during this telephone conversation, you told Steve Collins that you received a letter by first class on March 30th or 31st?

A.    Yes.  Mm-hmm.

Q.    But you told him you had not received the certified letter yet?

A.    I hadn't – yeah.  Had a pink slip in my box.  I let him know I had a pink slip.

Q.    Do you recall whether you called Steve Collins at the union office or on his cell phone?

12

A.     Probably both.

Q.     So you placed two phone calls to Steve Collins?

A.     I'm not exactly sure if I placed two phone calls.  I'm not exactly sure I dialed the union office and actually got – spoke with him or actually dialed his cell phone and spoke with him. Whichever one that I did dial at the time, I spoke with him.

Q.     Was this your first attempt to contact him or were there other messages that you left before?

A.     Not sure.

(Wilson Tr. at 40-42; Apx. at A-12, A-13).


D.     The Union Vigorously Pursues the Grievance to Arbitration, but the Arbitrator Denies the Grievance as Being Untimely Filed.

During the April 6th meeting, Collins began obtaining information from Wilson to file the grievance challenging the issuance of the Notice of Removal. (Wilson Tr. at 24-25; Apx. at A-8). Wilson was satisfied with the meeting. Id.  After the initial meeting with Wilson, Collins began an investigation into the merits of the removal, prepared an information request to serve on the Postal Service and marshaled his arguments in support of the grievance. (Collins Tr. at 40-43, 47 and Exhibit 2; Apx. at A-99, A-100, A-101, A-104).  Collins wanted to make sure that he fully understood the case before filing the initial grievance both to be able to convince the Postal Service that it had removed Wilson in error and to ensure that no arguments were left out. (Collins Tr. at 40-43, 48, 52-54; Apx. at A-99, A-100, A-101, 102, 103).

On April 16, 2004, ten days after the date Wilson represented to Collins that she had received the Notice of Removal, Collins filed the Step 1 grievance challenging the issuance of the Notice of

13

Removal to Wilson. (Collins Tr. at 48-49; Wilson Tr. at 31 and Exhibit 5; Apx. at A-101, A-10, A-39). Collins believed that he was filing the grievance four days before the time limit ran out. Id. Collins raised a number of procedural and substantive arguments in seeking to prevail on the grievance, including that the removal was untimely, not for just cause, punitive, not corrective in nature, that Wilson's work at Boscov's did not overlap with her sick leave, that her asthmatic condition caused her to be sick during Postal Service working hours but was cleared up with medicines to allow her to work at night at Boscov's, and was in violation of Postal Service regulations. (Collins Tr. at 23-31, 35-37 and Exhibit 5 to the Wilson Tr.; Apx. at A-95-97, A-98, A-39).[6] The Postal Service did not raise the timeliness argument at Step 1 of the grievance procedure, but the Postal Service did deny the grievance at Step 1. (Collins Tr. at 40, 50 and Exhibit 5 to the Wilson Tr.; Apx. at A-99, A-102, A-39).

The Union appealed the grievance to Step 2. (Wilson Tr. at Exhibit 5; Apx. at A-39). The Postal Service denied it at Step 2 on April 27, 2004, raising the issue for the first time that the grievance was filed more than fourteen days after Wilson had received the Notice of Removal on March 30, 2004. (Collins Tr. at 50 and Exhibit 3; Apx. at A-102, A-105). Per the National Agreement, the Union submitted Additions, Corrections and Deletions challenging the Postal Service's claim that the grievance was filed untimely. (Collins Tr. at 50-51 and Exhibit 4; Apx. at A-102, 223).

---

[6]     Wilson never expressed to the Union that it should have made different or additional arguments on the merits. (Collins Tr. at 37; Apx. at A-98).

The grievance was appealed to arbitration. During a pre-arbitration preparation session, Collins and Wilson met to discuss how to attack the Postal Service's timeliness argument. (Wilson Tr. at 32-33; Apx. at A-10). They also discussed the merits of the case, reviewed a number of documents, and prepared Wilson for direct questioning and cross-examination. (Wilson Tr. at 34-35; Apx. at A-11). At the arbitration hearing, Collins acted as the Union's arbitration advocate. (Wilson Tr. at 35; Apx. at A-11). Collins prepared and read an opening statement during the arbitration hearing, he called witnesses and submitted exhibits in support of the grievance, he cross-examined Postal Service witnesses and objected to their submission of exhibits, he submitted arbitration awards in support of the Union's position on both the timeliness issue and on the merits, and he made a number of procedural and substantive arguments in support of the grievance. (Wilson Tr. at 35-36; Collins Tr. at 51; Drummer at 53; Keen Tr. at 47-49; Apx. at A-11, A-102, A-154, A-142). The Postal Service advocate believed that the Union put forth vigorous efforts in trying to prevail on the grievance on Wilson's behalf. (Keen Tr. at 44-45, 49; Apx. at A-141, A-142). Wilson believed that Collins was trying to prevail on the grievance. (Wilson Tr. at 37; Apx. at A-11).

During the arbitration hearing, Wilson did not testify that she had received the Notice of Removal on March 30 or 31, 2004. (Wilson Tr. at 39; Apx. at A-12). Instead, she testified that the first time that she received the Notice of Removal was when she signed for and picked-up the Certified Mail letter on April 6, 2004. Id. Wilson admitted during her deposition that she lied under oath during the arbitration hearing about when she had received the Notice of Removal. (Wilson Tr. at 39, 61-62; Apx. at A-12, A-17, A-18).

15

In response to Wilson's testimony, the Postal Service sprung Wilson's signed EEO affidavit on her on cross-examination in which she swore that she had received the Notice of Removal on March 31, 2004. (Keen Tr. at 53; Collins Tr. at 44; Wilson Tr. at 25-26 and Exhibit 3; Apx. at A-143, A-100, A-8, A-9, A-30). Wilson did not show the EEO affidavit to the Union prior to the arbitration hearing, and Collins had never seen it prior to the arbitration hearing. (Wilson Tr. at 38; Collins Tr. at 45; Apx. at A-12, A-100). Collins strenuously objected to the admission of Wilson's EEO affidavit. (Collins Tr. at 45; Apx. at A-100).

On November 10, 2004, Arbitrator George R. Shea, Jr. denied the grievance challenging Wilson's removal finding the grievance untimely filed. (Wilson Tr. at 37-39 and Exhibit 6; Apx. at A-11, A-12, A-43). Arbitrator Shea held at page 9 of his Award: "Conversely, the documentary evidence established that the First Class mailing was delivered to the Grievant's resident address of record on March 30, 2004. The Arbitrator further determines that the preponderance of documentary evidence and credible testimony establish that the Grievant actually received the Notice of Removal contained in the First Class mailing on or before March 31, 2004." (Exhibit 6 to the Wilson Tr.; Apx. at A-43). Collins believes that a major factor in the arbitrator's ruling was Wilson's sworn EEO affidavit where she stated that she received the Notice of Removal on March 31, 2004. (Collins Tr. at 45; Apx. at A-100).

Wilson has no reason to believe that Collins would not have wanted her to prevail on the grievance challenging her removal. (Wilson Tr. at 52; Apx. at A-15). Wilson believes that the Union's failure to file the grievance timely may just have been a mistake. (Wilson Tr. at 49-50; Apx. at A-14, A-15). Collins and the Union have represented Wilson in at least six other grievances.

16

(Wilson Tr. at 47-48 and Exhibit 8; Apx. at A-14, A-54).  Wilson has not had any problems with how Collins and the Union have represented her in any of these other grievances.  Id.  Collins successfully represented Wilson in challenging her denial of unemployment benefits from the Postal Service. (Wilson Tr. at 59-60; Apx. at A-17).  And, Collins represented Wilson at an EEO fact-finding session prior to her removal from the Postal Service. (Wilson Tr. at 60-61; Apx. at A-17).

**ARGUMENT**

A.    Introduction

Plaintiff Melinda Wilson has sued the Wilmington Delaware/Malcolm T. Smith Area Local, American Postal Workers Union, AFL-CIO ("Union") for breach of the duty of fair representation and the United States Postal Service ("Postal Service") for breach of contract.  In order to succeed on this hybrid claim, Wilson must establish both that the Union breached its duty of fair representation owed to her and that her employer, the Postal Service, violated the collective bargaining agreement that governed the terms and conditions of Wilson's employment.  The standard for breach of the duty of fair representation is well settled.  A union breaches its duty of fair representation only if its conduct is arbitrary, discriminatory or in bad faith.  Negligence, ineptitude or poor judgment, as a matter of law, does not assert a claim for breach of the duty of fair representation.

Wilson was terminated from the Postal Service for fraudulently utilizing her sick leave from the Postal Service on the same day that she worked a second job as a clerk at a department store.

17

Wilson wished to grieve her termination through the grievance and arbitration procedure set forth in the collective bargaining agreement that covered the terms and conditions of her employment at the Postal Service.

In writing, Wilson represented to Steven Collins, the President of the Union, that she had received her Notice of Removal from the Postal Service on April 6, 2004. Collins filed a grievance challenging Wilson's termination on April 16, 2004, well within the fourteen (14) day time limit for filing grievances set forth in the applicable collective bargaining agreement.[7] It was later learned by the Union that the Postal Service was claiming that the grievance was untimely because Wilson had received the Notice of Removal by first class mail on March 31, 2004. The Union fought the Postal Service's timeliness argument all of the way up to arbitration. The arbitrator held that Wilson had received the Notice of Removal by first class mail on March 31, 2004, and accordingly the statute of limitations for filing a grievance began on that day rendering the grievance untimely as it had not been filed until April 16th. The arbitrator relied upon, among other things, an EEO Affidavit signed by Wilson indicating that she had received the Notice of Removal on March 31st. Wilson did not inform the Union that she had signed an EEO Affidavit contradicting her written statement to the Union. As the Union filed the grievance within fourteen (14) days of the date that Wilson represented to the Union that she had received the Notice of Removal from the Postal Service, the fault of not filing a timely grievance lies solely at the feet of Wilson.

---

[7]    The applicable collective bargaining agreement states that the grievance must be filed within fourteen (14) days of the date on which the employee or the Union first learned or may reasonably have been expected to have learned of its cause. (Exhibit 4 to the Wilson Tr.; Apx. at A-37).

The Union maintains that Wilson represented to Collins that she first had knowledge of the Notice of Removal on April 6, 2004, the date she signed for and picked-up the certified letter containing the Notice of Removal at the Post Office. Wilson, in contradictory testimony, indicates that she may have notified the Union that she had received the Notice of Removal by first class mail prior to April 6th and by Certified Mail – Return Receipt Requested on April 6th. Even if Wilson's inconsistent testimony is credited, no breach of the duty of fair representation has been committed. Collins' determination that the statute of limitations for filing a grievance does not begin until after a terminated employee verifies receipt of the Notice of Removal by signing for the Certified Mail letter, as opposed to the indeterminable time of when an individual receives a first class mail letter, was, at most, negligent. The Union's failure to file a timely grievance was not arbitrary, discriminatory or in bad faith. Viewed in its totality, the Union vigorously challenged Wilson's removal and did everything in its power to win the timeliness argument and get the grievance heard on its merits. The mistake in not filing the grievance over the Notice of Removal was understandable, and therefore cannot serve as the basis for a breach of the duty of fair representation claim.

Additionally, under the terms of the applicable collective bargaining agreement, it was Wilson who had the obligation to initiate the grievance at Step 1 of the grievance-arbitration procedure. Having failed to initiate the grievance process, Wilson cannot claim that it was the Union's fault that a timely grievance was not filed.

Moreover, there is no evidence that the Postal Service's termination of Wilson was in violation of the applicable collective bargaining agreement. The Postal Service's Employee and

Labor Relations Manual ("ELM") states, "An employee who is in sick leave status may not engage in any gainful employment unless prior approval has been granted by appropriate authority." Numerous arbitrators have upheld employee terminations for working second jobs while on sick leave from the Postal Service. Thus, under the terms of the collective bargaining agreement, the Postal Service had just cause to terminate Wilson.

B.     The Applicable Legal Standards

As described above, Wilson was an employee of the Postal Service represented by the Union who was terminated for working a second job on the same dates that she took sick leave from the Postal Service. Such actions are subject to challenge under the grievance-arbitration procedures set forth in the collective bargaining agreement between the Postal Service and the Union, and the Union appealed the grievance over her discharge to arbitration. After a neutral arbitrator determined that the grievance was untimely, Wilson commenced a lawsuit against the Union and the Postal Service alleging that the Union violated its duty to fairly represent her and that the Postal Service violated the terms of the collective bargaining agreement by terminating her.[8] In order to prevail on this cause of action, Wilson must prove both that (1) the Union breached its duty of fair representation, and (2)

---

[8]     A breach of the duty of fair representation claim is based on a judicially created exception to the general rule that an employee is bound by the outcome of grievance or arbitration procedures contained in the negotiated contract between the employer and the union. DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 165 (1983); Vaca v. Sipes, 386 U.S. 171, 185-86 (1967). Because a union is authorized to act as the exclusive bargaining agent for its members, it has a duty to provide fair representation in the negotiation, administration and enforcement of the collective bargaining agreement. Findley v. Jones Motor Freight, 639 F.2d 953, 957 (3d Cir. 1981).

20

the Postal Service violated the terms of its Agreement with the Union. DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 165 (1983); Vaca v. Sipes, 386 U.S. 171, 185-186 (1967); United Parcel Service, Inc. v. Mitchell, 451 U.S. 56, 66-67 (1981); Findley v. Jones Motor Freight, 639 F.2d 953, 957-58 (3d Cir. 1981).[9]

C.    The Duty of Fair Representation

There is, of course, a well developed body of federal case law defining a union's duty of fair representation and the standard of liability for breach of same.  A union breaches its duty of fair representation only if its conduct is arbitrary, discriminatory, or in bad faith. Vaca v. Sipes, 386 U.S. 171, 190 (1967); Riley v. Letter Carriers Local No. 380, 668 F.2d 224, 228 (3d Cir. 1981); Findley, 639 F.2d at 957.

---

[9]    While postal unions are covered by 39 U.S.C. §1208(b), instead of the provision covering private sector employees, Section 301 of the Labor Management Relations Act, 29 U.S.C. §185(a), the same principles that apply in private sector cases apply in postal cases. See Miller v. USPS, 985 F.2d 9, 10 (1st Cir. 1993); Corbin v. Runyon, 188 F.3d 518 (table), 1999 WL 590749, **4 (10th Cir. 1999); Bacashihua v. United States Postal Service, 859 F.2d 402, 405, (6th Cir. 1988)("Section 301 law is therefore consistently applied to actions brought under 39 U.S.C. §1208(b)."); American Postal Workers Union, AFL-CIO v. United States Postal Service, 823 F.2d 466, 469 (11th Cir. 1987); Johnson v. United States Postal Service, 756 F.2d 1461, 1465 (9th Cir. 1985)("Because [39 U.S.C. Section 1208] is essentially identical to Section 301 of the National Labor Relations Act, Bowen v. United States Postal Service, 459 U.S. 212 232 n.1 (1983), we may properly rely on Section 301 cases for guidance."); McNair v. United States Postal Service, 768 F.2d 730 (5th Cir. 1985); Abernathy v. USPS, 740 F.2d 612, 617 (8th Cir. 1984); Lawson v. Truck Drivers, Chauffeurs & Helpers, 698 F.2d 250, 255 (6th Cir.), cert. denied, 464 U.S.814 (1983);  Columbia Local, APWU v. Bolger, 621 F.2d 615 (4th Cir. 1980); NALC v. USPS, 590 F.2d 1171 (D.C. Cir. 1978); Melendy v. USPS, 589 F.2d 256, 260 (7th Cir. 1978); NALC v. Sombrotto, 449 F.2d 915 (2d Cir. 1971).

The Supreme Court has stated that a union's conduct is "arbitrary" only when, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is characterized as so far outside a "wide range of reasonableness" that it is wholly "irrational" or "arbitrary." Air Line Pilots Association v. O'Neill, 499 U.S. 65, 77-78 (1991); Findley, 639 F.2d at 957. To prove that a union's conduct was discriminatory, a plaintiff must establish that the union's actions were "invidious." Carter v. United Food & Commercial Workers, 963 F.2d 1078, 1082 (8th Cir. 1992). A union will be deemed to have acted in bad faith when there is substantial evidence of "fraud, deceitful action, or dishonest conduct." Humphrey v. Moore, 375 U.S. 335 (1964).

The Third Circuit has repeatedly held that mere ineptitude, simple negligence or poor judgment in the presentation of a grievance by a union is insufficient to establish a breach of the duty of fair representation. Riley, 668 F.2d at 228-29; Findley, 639 F.2d at 959; Bazarte v. United Transportation Union, 429 F.2d 868, 872 (3d Cir. 1970); see also Carino v. Stefan, 376 F.3d 156, 161 (3d Cir. 2004). "The grievance process cannot be expected to be error-free." Findley, 639 F.2d at 958 (quoting Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 571 (1976)). "The fact that trained counsel would have avoided the error or pursued a different strategy is not enough." Riley, 668 F.2d at 228 (citing Findley, 639 F.2d at 958). The U.S. Court of Appeals for the Third Circuit has held:

> [T]here [i]s no breach of duty even if the union representatives were "unwise" in their judgment or "negligent" in arriving at their decision, because mere inadequacy [i]s not the standard to be applied. Rather, it [i]s necessary to show that the union proceeded in bad faith or an arbitrary manner, and its short-comings prejudiced the member's cause.

22

Findley, 639 F.2d at 959 (citing Bazarte, 429 F.2d at 872).  A grievant who finds her grievance time barred as a result of negligence of the union in failing to timely file the grievance does not have a breach of the duty of fair representation claim against the union. Riley, 668 F.2d at 230 n. 12. Accordingly, a union is protected from liability even if it acts on its mistaken belief, so long as it acted in good faith. Vaca v. Sipes, supra.; IBEW v. Foust, 442 U.S. 42, 51 (1979).

D.    Wilson Had the Obligation to File a Grievance at Step 1 Challenging the Notice of Removal.

Article 15 of the National Agreement is clear.  Under Step 1 of the grievance-arbitration procedure, it is the employee who must initiate the grievance procedure by discussing the grievance with his or her supervisor.  (Wilson Tr. at 30 and Exhibit 4; Apx. at A-10, A-37).  The Union may initiate the grievance procedure, if it so chooses, but it is the employee who has the burden of initiating the grievance procedure. Id.  Wilson believed that any grievance challenging the decision to remove her had to be filed within fourteen days of her receipt of the Notice of Removal. (Wilson Tr. at 19; Apx. at 7).  And, from her time as a supervisor in the Postal Service and as a steward for the Union, Wilson should have been aware that employees could file Step 1 grievances without going through their union steward. (Wilson Tr. at 10-12; Apx. at A-5).  Wilson, however, did not file a Step 1 grievance challenging the Notice of Removal.  Wilson's failure to file a grievance at Step 1 challenging her Notice of Removal defeats her claim that the Union breached its duty of fair representation. See Roeder v. American Postal Workers Union, AFL-CIO, 180 F.3d 733, 736, 738 (6th Cir. 1999)(citing Woolsey v. Avco Corp., 944 F.2d 313, 319 (6th Cir. 1991)).

23

E.    <u>Wilson Is At Fault For the Grievance Being Untimely Filed as She Informed the Union that
      She Received the Notice of Removal on April 6, 2004.</u>

Wilson's claim that the Union was at fault for filing the grievance out of time has no merit,

because Wilson incorrectly informed the Union that she had received the Notice of Removal on

April 6, 2004, instead of March 31, 2004.  Wilson wrote out a statement to the Union that she had

received the Notice of Removal on April 6, 2004. (Wilson Tr. at 23-24 and Exhibit 2; Apx. at A-8,

A-28).  At their meeting on April 6th, Wilson does not recall telling Collins that she received the

Notice of Removal by first class mail on March 30th or 31st. (Wilson Tr. at 24; Apx. at A-8).  Collins

had no knowledge that Wilson had received the Notice of Removal prior to April 6, 2004. (Collins

Tr. at 14-22, 39, 46-47; Apx. at A-93-95, A-99, A-101).  Based on Wilson's written statement to the

Union that she had received the Notice of Removal on April 6, 2004, the Union filed the grievance

on April 16, 2004, well within the fourteen day time limit set forth in the National Agreement.

(Exhibit 4 to the Wilson Tr.; Apx. at A-37).  Wilson's failure to inform the Union that she had

actually received the Notice of Removal on March 31, 2004 is no one's fault but her own.  The

Union had a right to rely on Wilson's written statement that she received the Notice of Removal on

April 6th.  The Union cannot be held liable for relying on the written statement.  As Wilson informed

the Union that she received the Notice of Removal on April 6th, the Union's reliance on that

statement to conclude that it had fourteen days to file the grievance from that date could not have

been a breach of the duty of fair representation.

Additionally, Wilson is at fault for never telling the Union about the EEO affidavit where she

swore that she received the Notice of Removal on March 31, 2004. (Wilson Tr. at 38; Collins Tr.

24

at 45; Apx. at A-12, A-100). This piece of evidence, which contradicted Wilson's arbitration testimony, was a major factor in Arbitrator Shea's determination that the grievance was untimely filed. (Wilson Tr. at 37-39 and Exhibit 6; Collins Tr. at 45; Apx. at A-11, A-12, A-43, A-100). The Union cannot be faulted for failing to prevail on a timeliness argument when it was surprised at arbitration by a signed affidavit from the Grievant that the Grievant had never told the Union about and had directly contradicted the information that the Grievant provided to the Union and that the Grievant testified at the arbitration hearing.

Finally, the Union cannot be faulted for Wilson's lying under oath to the Arbitrator that she first received the Notice of Removal on April 6, 2004. (Wilson Tr. at 39, 61-62; Apx. at A-12, A-17, A-18). At the arbitration hearing, Wilson testified that she had not been at her residential address between March 26, 2004 and April 6, 2004 for personal reasons, that April 6, 2004 was the first notification she received of the Notice of Removal and that she immediately contacted the Union and provided the Union with a written statement regarding the charges upon which the removal was based. (Exhibit 6, p. 5-6 of Wilson Tr.; Apx. at A-48, A-49).

Wilson made a written statement to the Union that she had received the Notice of Removal on April 6, 2004. Wilson told the Arbitrator under oath that she had received the Notice of Removal on April 6, 2004. But, Wilson swore in an EEO affidavit, that she never told the Union about, that she had received the Notice of Removal on March 31, 2004. The Arbitrator's ruling that the grievance was untimely because Wilson received the Notice of Removal on March 31, 2004 is the fault of Wilson alone. She misled the Union and the Arbitrator. The Union's reliance on Wilson's written statement as to when she received the Notice of Removal for when the Union filed the

grievance cannot serve as the basis for a breach of the duty of fair representation claim.  Thus, Wilson's lawsuit must be dismissed.

F.  <u>Even if Wilson's Testimony that She Informed the Union that She Received the Notice of Removal by First Class Mail on March 30 or 31, 2004 Is Credited, the Union's Determination that the Date She Signed for the Certified Letter Started Tolling the Time Limits for Filing the Grievance Was No More than Mere Negligence.</u>

Wilson is an inherently non-credible witness.  In addition to having been terminated for improperly taking sick leave from her Postal Service job and then going to work a second job and having lied under oath to the Arbitrator, Wilson offered contradictory testimony with respect to whether she informed the Union that she had received a Notice of Removal prior to April 6, 2004.  At first, Wilson stated that she only attempted to get in touch with Collins prior to April 6th and that she could not reach him until April 6th. (Wilson Tr. at 21-22; Apx. at A-7, A-8).  Wilson then testified that she did leave a message for Collins about her receipt of the Notice of Removal prior to April 6th. (Wilson Tr. at 29; Apx. at A-9)  Wilson then changed her testimony again and claimed that she spoke with Collins about her receipt of the Notice of Removal on March 30th or 31st prior

to April 6, 2004. (Wilson Tr. at 40-42; Apx. at A-12, A-13).[10]  Wilson's contradictory testimony should not be credited.

Nevertheless, even if it were accepted that Wilson informed Collins that she had received the Notice of Removal by first class mail on March 30 or 31, 2004, Collins' decision to file the grievance on April 16, 2004, within fourteen days after Wilson had received the Notice of Removal by Certified Mail, does not rise to the level of a breach of the duty of fair representation.

At most, the Union's determination that the time limits began to run when Wilson signed for receipt of the Certified Mail letter as opposed to when she received the Notice of Removal by first class mail was mere ineptitude, simple negligence or poor judgment.  Collins may have made an error in concluding that the time limits began to run when Wilson verified receipt of the Notice of Removal by signing for the Certified Mail letter, but such a conclusion would not have been so far outside the wide range of reasonableness so as to be arbitrary. O'Neill, 499 U.S. at 77-78 (1991);

---

[10]    Wilson's claim that she spoke to Collins and told him that she had received the Notice of Removal on March 30 or 31, 2004, defies logic for several reasons.  First, Wilson testified that on April 6, 2004, when she notified Collins that she had received the Notice of Removal by Certified Mail, Collins told Wilson to "come in right away on that day to begin the process of the grievance." (Wilson Tr. at 19; Apx. at A-7).  It seems unbelievable that if Wilson had told Collins prior to April 6th that she had received a Notice of Removal by first class mail that Collins would not have had a similar reaction.  Second, it is not logical that if she had told Collins that she had received the Notice of Removal prior to April 6th that he would have allowed her to write in her statement that she had received the Notice of Removal on April 6th. (Exhibit 2 to the Wilson Tr.; Apx. at A-28).  Third, it is not logical that Collins would have allowed Wilson to testify under oath that the first date that she received the Notice of Removal was April 6, 2004.  Collins was a competent and creative advocate.  Had Wilson told him that she had actually received the Notice of Removal by first class mail on March 31st, Collins would likely have argued during the hearing that the time limits began on the date that Wilson signed for the Certified Mail letter, not when she received the first class mail, as there is no proof as to when the first class mail letter was delivered.

Findley, 639 F.2d at 957.   It would not have been irrational for Collins to conclude that because there is no way to verify when a first class letter is delivered or received that this could not be used to start the running of the limitations period, especially when the Postal Service also sends the Notice of Removal by Certified Mail, which has a signature mechanism that allows for a verifiable receipt date.[11] As even admitted by Wilson, Collins' belief that the time limits for filing the grievance began to run on the date that Wilson signed for the Certified Mail letter was a mere mistake. (Wilson Tr. at 49-50; Apx. at A-14, A-15).

The mistake in the determination as to when the time limits began to run for the grievance challenging the issuance of the Notice of Removal to Wilson does not rise to the level of a breach of the duty of fair representation.  The grievance process is not expected to be error free.  The Third Circuit has repeatedly held that mere ineptitude, simple negligence or poor judgment in the presentation of a grievance by a union is insufficient to establish a breach of the duty of fair representation. Riley, 668 F.2d at 228-29; Findley, 639 F.2d at 959; Bazarte, 429 F.2d at 872; see also Carino, 376 F.3d 156, 161 (3d Cir. 2004).  A grievant who finds her grievance time barred as a result of negligence of the union in failing to timely file the grievance does not have a breach of the duty of fair representation claim against the union. Riley, 668 F.2d at 230 n. 12. An honest

---

[11]     When an employer sends a letter by Certified Mail, it is fair to assume that the purpose is to obtain a verifiable date as to when the recipient receives the letter.  Obtaining a signature to receive a piece of mail can be used to establish a verifiable receipt date for purposes such as when notice began.  Additionally, verifying when an individual actually receives a first class letter is difficult and likely to be fraught with conflicting testimony.  Thus, it is rational, if incorrect, for a non-lawyer to believe that when a Notice of Removal is sent by both first class mail and Certified Mail that notice of the Notice of Removal is upon signing for the Certified Mail letter, as that is the most verifiable date of notice.

mistake is not actionable. Accordingly, a union is protected from liability even if it acts on its mistaken belief, so long as it acted in good faith. Thus, if Collins mistakenly believed that the time limits for filing the grievance began on the date that Wilson signed for the Certified Mail letter as opposed to when she received it by first class mail, that mistake was based on a good faith belief with respect to when the time limits for grievances begin to run, a mistake that was shared by Wilson. (Wilson Tr. at 20-21; Apx. at A-7).

Furthermore, there is no evidence that the Union's decision to file the grievance on April 16th was discriminatory or in bad faith, as opposed to a mere mistaken belief as to when the time limits for filing the grievance began. All the evidence establishes that the Union acted in good faith to try to fulfill its duty of fair representation with respect to Wilson. Wilson believed that Collins was trying to prevail on the grievance for her. (Wilson Tr. at 37; Apx. at A-11). Wilson stated that she had no reason to believe that Collins would not have wanted her to prevail on the grievance challenging her removal. (Wilson Tr. at 52; Apx. at A-15). Wilson had no issue with Collins or the Union in the six other grievances that were filed on Wilson's behalf. (Wilson Tr. at 47-48 and Exhibit 8; Apx. at A-14, A-54). Collins successfully represented Wilson in challenging her denial of unemployment benefits from the Postal Service. (Wilson Tr. at 59-60; Apx. at A-17). Collins represented Wilson at an EEO fact-finding session prior to her removal from the Postal Service. (Wilson Tr. at 60-61; Apx. at A-17). And, Collins appointed Wilson to be a steward for the Union. (Wilson Tr. at 11-12; Apx. at A-5).

Accepting Wilson's conflicting testimony in the light most favorable to Wilson, Collins mistakenly believed that the time limits for filing the grievance challenging Wilson's Notice of

Removal began to run on the date Wilson signed that she had received the Notice of Removal by Certified Mail, as opposed to the date when Wilson had received the Notice of Removal by first class mail. That determination, while an error in judgment, was neither arbitrary, nor discriminatory, nor made in bad faith. Accordingly, Wilson cannot establish a breach of the duty of fair representation claim against the Union and her lawsuit must be dismissed.

G.    <u>The Postal Service's Removal of Wilson was Not in Violation of the National Agreement, as the Postal Service Had Just Cause to Remove Wilson</u>.

Even if Wilson could somehow establish that the Union breached the duty of fair representation by filing the grievance on April 16, 2004, Wilson cannot establish the second prong of her claim, that the Postal Service breached the National Agreement by terminating her. After suspending Wilson for working a second job outside of the medical restrictions that she provided to the Postal Service, the Postal Service terminated Wilson when they discovered that she had worked a second job on several of the same days in which she had utilized her Postal Service sick leave. The Postal Service Employee and Labor Relations Manual ("ELM") could not be clearer on prohibiting the conduct engaged in by Wilson. Section 513.312 of the ELM states: "An employee who is in sick leave status may not engage in any gainful employment unless prior approval has been granted by appropriate authority." (Exhibit 1 to the Wilson Tr.; Apx. at A-25). Numerous arbitrators have upheld removals from the Postal Service for working a second job while in sick leave status at the Postal Service. (Dec. of Collins at ¶¶ 1-7 and Exhibits 1-6 attached thereto; Apx. at A-155).

Thus, Wilson cannot establish that the Postal Service violated the National Agreement by removing her and her claims fail for this reason also.

## CONCLUSION

For the above stated reasons, the Court should grant summary judgment to the Union.

Dated: February 23, 2006            Respectfully submitted,

                                    O'DONNELL, SCHWARTZ & ANDERSON,  P.C.

                                    By:____s/Peter J. Leff_____
                                          Peter J. Leff DC Bar # 457476
                                          1300 L Street NW Suite 1200
                                          Washington, DC 20005-4126
                                          (202)898-1707/FAX(202)682-9276
                                          pleff@odsalaw.com


                                    LAW OFFICE JOSEPH J. RHOADES

                                    By:_____s/Dale Bowers_____
                                          Dale Bowers (Delaware Bar Number 3932)
                                          1225 King Street, Suite 1200
                                          Wilmington, DE 19801
                                          (302) 427-9500/FAX  (302) 427-9509
                                          dale.bowers@rhoadeslegal.com

                                    Attorneys for the Wilmington Delaware/Malcolm T. Smith
                                    Area Local, American Postal Workers Union, AFL-CIO

<u>**Certificate of Service**</u>

I hereby certify that on Thursday, February 23, 2006, I electronically filed **Defendant APWU's Motion for Summary Judgment , Brief in Support Thereof and Appendix** with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Joseph M. Bernstein
Attorney at Law
800 N. King Street - Suite 302
Wilmington, DE 19801
Jmbern001@comcast.net

Patricia Hannigan, Esquire
Assistant United States Attorney
Nemours Building
P.O. Box 2046
Wilmington, DE 19899-2046
Attorney for defendant United States Postal Service
Patricia.hannigan@usdoj.gov

LAW OFFICE JOSEPH J. RHOADES

 /s/ A. Dale Bowers                              .
A. Dale Bowers, Esquire (BAR I.D. 3932)
1225 King Street, Suite 1200
Wilmington, DE 19801
(302) 427-9500/FAX  (302) 427-9509
dale.bowers@rhoadeslegal.com
Attorneys for the Wilmington Delaware/Malcolm T. Smith Area Local, American Postal Workers Union, AFL-CIO