## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MELINDA WILSON,                                :
                                               :
        Plaintiff,                        :
                                               :
    v.                                      :
                                               :     Civil Action No. 05-73-JJF
AMERICAN POSTAL WORKERS                        :
UNION, DELAWARE AREA LOCAL,                    :
AFL-CIO; and UNITED STATES                     :
POSTAL SERVICE, an independent                 :
Establishment of the Executive Branch          :
of the government of the United States         :
of America,                                    :
                                               :
        Defendants.                       :

## OPENING BRIEF OF THE UNITED STATES POSTAL SERVICE
## IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

COLM F. CONNOLLY
United States Attorney

Patricia C. Hannigan
Assistant United States Attorney
Delaware Bar I.D. No. 2145
The Nemours Building
1007 Orange Street, Suite 700
P. O. Box 2046
Wilmington, DE 19899-2046
(302) 573-6277

OF COUNSEL:
Donna G. Marshall, Attorney
Eastern Area Law Office
United States Postal Service
P. O. Box 40595
Philadelphia, PA 19197-0595
(215) 931-5090
(215) 931-5092 (fax)

Dated: February 24, 2006

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

NATURE AND STAGE OF PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    I.     THE UNION DID NOT BREACH ITS STATUTORY DUTY OF FAIR
           REPRESENTATION, THUS PLAINTIFF'S  CLAIMS AGAINST THE
           USPS MUST FAIL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    II.    EVEN IF THE UNION DID BREACH ITS DUTY OF FAIR
           REPRESENTATION, THE USPS IS ENTITLED TO SUMMARY
           JUDGMENT BECAUSE PLAINTIFF'S GRIEVANCE OF HER
           REMOVAL WAS NOT TIMELY FILED . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    III.   THE USPS HAD "JUST CAUSE" TO TERMINATE PLAINTIFF'S
           EMPLOYMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# TABLE OF AUTHORITIES

**CASES**                                                                          **PAGE**

*Air Line Pilots Association International v. O'Neill*
    499 U.S. 65 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Bieche v. United States Postal Service*
    91 Fed. Appx. 149 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Celotex Corp. v. Catrett*
    477 S.Ct. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Ethier v. United States Postal Service*
    590 F.2d 733 (8th Cir. 1979 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

*Fleming v. United States Postal Service AMF O'Hare*
    1992 WL 22207 *1 (N.D.Ill. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Hines v. Anchor Motor Freight, Inc.*
    424 U.S. 554 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

*Horowitz v. Fed. Kemper Life Assurance Co.*
    57 F.3d 300 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Justison v. Nat'l Postal Mail Handlers, et al.*
    815 F.Supp. 137 (D.De. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

*Lewis v. American Postal Workers Union*
    561 F.Supp. 1141 (W.D.Va. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

*Moten v. United States Postal Service*
    229 Ct. Cl. 796 (Ct. Cl 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Pa..Coal Ass'n v. Babbitt*
    63 F.3d 231 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Vaca v. Sipes*
    386 U.S. 171 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

*Weber v. Potter*
    338 F.Supp. 2d 600 (E.D.Pa. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**CASES**                                                                 **PAGE**

*Whitten v. Anchor Motor Freight, Inc.*
    521 F.2d 1335 (6th Cir. 1975)
    *cert. denied*
    425 U.S. 981 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Woloszyn v. Lawrence County*
    396 F.3d 314 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**STATUTES & OTHER AUTHORITIES**

Federal Rules of Civil Procedure
    56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## NATURE AND STAGE OF PROCEEDINGS

This is an action against the American Postal Workers Union ("Union") and the United States Postal Service ("USPS" or "Postal Service"), alleging a breach of its duty of fair representation by the former and wrongful discharge by the latter, in connection with the removal of Plaintiff as an employee of the USPS.

In the administrative phase of this dispute, Plaintiff requested and received representation from the Union after she received the Notice of Removal. A grievance was filed by the Union on her behalf but ultimately, after arbitration, it was determined that the grievance had been filed untimely. The grievance was denied on that ground, and no determination was made by the arbitrator on the merits.

Plaintiff then filed this action. Discovery has been concluded, and the USPS has moved for summary judgment. This is the Opening Brief in support of the USPS's motion.

## SUMMARY OF ARGUMENT

1.     The Union did not breach its statutory duty of fair representation, thus Plaintiff's claims against the USPS must fail.

2.     Even if the Union breached its duty of fair representation, taking all the facts in the light most favorable to Plaintiff, the USPS is entitled to summary judgment because Plaintiff's grievance was untimely filed.

3.     The USPS had just cause to terminate Plaintiff's employment.

## STATEMENT OF FACTS

Melinda Wilson ("Plaintiff") was initially hired by the United States Postal Service in April of 1985. *See* Transcript of Deposition of Melinda Wilson, page 5, (hereinafter "Plaintiff at __"); Appendix to United States Opening Brief in Support of its Motion for Summary Judgment, page 3, (hereinafter "A-__"). Beginning in 1992, Plaintiff was placed in "limited duty" status[1] as a result of developing an on-the-job injury, namely ganglion cysts on her wrists from repetitive motion. Plaintiff at 7-8; A- 4-5. Other than a period from June to October of 2002, Plaintiff remained in limited duty status until the incidents that gave rise to this Complaint, in December of 2003. Plaintiff at 9-10; A-6-7.

Over that eleven-year period, Plaintiff sought, and was given, various accommodations in her work schedule and job duties as a result of additional alleged medical conditions. Plaintiff at 69-70; A- 15-16. According to notes from her physician, supplied by Plaintiff in response to requests from her supervisors at the USPS, these medical conditions included asthma, back and neck pain, a sleep disorder, severe depression (which required that she work only daylight hours, permanently) and tendonitis, which rendered her unable to do her job standing, as was the norm. Plaintiff at 70; A-16, Plaintiff's Deposition Exhibit 19 (hereinafter "Plaintiff Dep. Ex.__");

---

[1] "Limited duty" is to be distinguished from "light duty." *See* Transcript of Deposition of Carla Van Istendal, page 46 (hereinafter "Van Istendal at __"); A-79. "Limited duty" is an entitlement for an employee who has sustained an on-the-job injury. Ms. Van Istendal testified that the Postal Service is required to provide limited duty to accommodate an employee who sustains an injury while on the job. *Id.* "Light duty," on the other hand, can be requested by an employee who sustains an injury (or develops a medical condition) unrelated to his or her job with the USPS, which injury renders the employee unable to perform his or her usual job function. According to Ms. Van Istendal, the Postal Service is not required to accommodate such an employee, although its policy is to attempt to do so. *Id.*

- 2 -

A-47. Her doctor repeatedly specified that she required a "sit down position" and needed a chair with arm rests. *Id.* In addition, she was restricted to lifting no more than 20 pounds. The Postal Service accommodated all these restrictions. Plaintiff at 69-70; A-15-16.

Unbeknownst to the Postal Service, on September 1, 2003, Ms. Wilson applied for a part-time position as a sales clerk at Boscov's department store in Newark, Delaware, requesting work from 3:30 or 4:00 p.m. until closing, at approximately 9:00 p.m. Plaintiff at 73; A-17; Plaintiff Dep. Ex. 20, A-50. The physical demands of the position included standing throughout her shift, stooping, bending, reaching, climbing, twisting and lifting up to fifty pounds. *Id.* Plaintiff noted on the application that she had no physical restrictions of any sort. *Id.* She was hired, and began working as a sales clerk on the evening shift at Boscov's in October, 2003. *Id.*; MW/0340, A-60 .

Sometime in November or December of 2003, Plaintiff's supervisor, Linda Drummer, came upon Plaintiff while shopping at Boscov's. *See* Transcript of Deposition of Linda Drummer, page 7 (hereinafter "Drummer at __"); A-96. The next day, Ms. Drummer reported to her own supervisor, Carla Van Istendal, that Ms. Wilson appeared to be performing duties that contradicted the medical restrictions she had alleged to the USPS, and which the USPS had accommodated for years. Drummer at 8; A-97. Ms. Van Istendal and Ms. Drummer asked Plaintiff for updated documentation of her medical restrictions. Van Istendal Dep. Ex. 4; A-91. In response, Plaintiff provided a form dated December 12, 2003, ostensibly signed by her physician, stating that, among other things, she continued (1) to be limited to lifting/carrying no more than 20 pounds, (2) to be unable to stand or (3) to reach above her shoulder, even for one hour per day, (4) to require a chair with arm rests, and (5) to require that she be permitted to

- 3 -

apply heat or ice every hour as needed for neck or back pain. Plaintiff Dep. Ex. 19, MW/0377, A-58; Van Istendal Dep. Ex. 4, A- 91.

Discerning an apparent conflict between the medical condition the Postal Service had been accommodating and Plaintiff's job demands at Boscov's, Ms. Van Istendal investigated further. She met with the Human Resources Manager at Boscov's on December 22, 2003, who confirmed that Plaintiff had been working there twenty-five hours per week since October 20, 2003, and that her job required her to stand the entire time. Drummer Dep. Ex. 5; A-101. Ms. Van Istendal and Ms. Drummer confronted Ms. Wilson on December 24, 2003 about the apparent conflict. Van Istendal at 12, 16-17, 21; A- 66,70-71, 73. Plaintiff replied that her medical documentation applied only to the USPS job. Van Istendal at 16-17, A- 70-71; Van Istendal Dep. Ex. 4, A- 91. Ms. Van Istendal informed Plaintiff that since she had no open claim of an on-the-job injury at that time, she was no longer entitled to "limited" duty. Moreover, in light of the ambiguity of her medical constraints, Ms. Van Istendal was unwilling to permit Plaintiff to remain even in a light duty status, until she clarified her medical situation. Van Istendal at 13-15, 20; A- 67-69, 72. Plaintiff was sent home.[2] Van Istendal at 20-21, 29; A-72-73, 78. Ms. Van Istendal placed Ms. Wilson in "off duty" (unpaid) status until she provided clarification of her current medical conditions and consequent job restrictions. *Id.*

Plaintiff was briefly permitted to return to work in February, 2004, but following further investigation and consideration by her supervisors, including the use of a surveillance camera to record Ms. Wilson's robust performance of several physical actions while on the job at Boscov's,

---

[2] The Union filed a grievance on Ms. Wilson's behalf, complaining about this action. *See* Transcript of Deposition of Andrew Keen pages 17-18; Keen Ex. 4; A-290-91.

her employment was terminated. The termination was based upon the conclusion reached by Ms. Drummer and Ms. Van Istendal, that Plaintiff had misled the USPS about her medical and physical limitations. Drummer Dep. Ex. 4, A- 98; Van Istendal at 20-22; A-72-73. In addition, comparison of USPS and Boscov's employment records revealed that Ms. Wilson had gone to work at Boscov's on certain days when she had called in sick to the USPS (and was given paid sick leave under the Family Medical Leave Act), and on one occasion she left work early at the USPS, claiming to be sick, and went directly to Boscov's to work for several more hours. Van Istendal at 9, 26, 28, 57, A- 64, 76, 77, 82; Van Istendal Dep. Ex. 1; A-83.

On March 30, 2004, Plaintiff was issued a Notice of Removal from the USPS, (Plaintiff Dep. Ex. 1, A-18) listing three reasons justifying termination: (1) the repeated occasions on which she had worked at Boscov's on days she had taken paid sick leave from the USPS, (2) a conflict of interest in performing job functions at Boscov's which she claimed to be unable to do for the USPS; (3) and for violating the USPS requirement "that postal personnel be honest, reliable, trustworthy, courteous and of good character." Id.; Keen at 34-35; A-108-09; Van Istendal at 11-12, 17, 21-23, 55-56; A-65-66, 71, 73-75, 80-81.

On her behalf, on April 16, 2004, the American Postal Workers Union (hereinafter "Union") filed another grievance, this time complaining about her removal. Plaintiff Dep. Ex. 2, A-21. The Union argued that the fact Ms. Wilson worked a second job on days she took paid sick leave from the USPS was irrelevant because, with one exception, the hours of her job at Boscov's were not the same as the hours of her duty shift with the USPS. *See* Deposition of Steven Collins, page 13, 16 (hereinafter "Collins at __;"); A-118, 119. It was perfectly plausible, the Union argued, that she was sick during the day but felt better by evening and so was able to

- 5 -

report to Boscov's for her tour of duty there. As to her medical restrictions, the Union argued that Ms. Wilson could not be disciplined for taking protected FMLA leave, which was supported by the medical documentation she had provided. Collins at 31; A-126.

The Union also argued that there were certain procedural violations of the Collective Bargaining Agreement in the manner in which Ms. Wilson was removed, including that the discipline was excessive, it was not progressive or corrective, and that it was a conflict of interest for Ms. Van Istendal to have participated in interviewing Plaintiff at her "Day In Court" and then also to have been the "concurring official" who approved Ms. Wilson's removal. Collins at 23, 36-37; A-125, 129-30. The Union's representation of Ms. Wilson at arbitration included meeting with her beforehand to prepare for the hearing, cross-examining the USPS witnesses, calling witnesses on Plaintiff's behalf, objecting to certain items of evidence offered by the USPS, and introducing exhibits on behalf of Ms. Wilson. Keen at 47-49, A-112-113; Collins at 45, 51, A-135-139. Mr. Collins also prepared and read an opening statement at the arbitration, and performed legal research to find other cases supporting Plaintiff's position. Collins at 41-42, 51, A-132-133, 139. Andrew Keen, the USPS representative throughout the grievance process, characterized the Union's representation as "vigorous," and Steve Collins, the Union representative, testified at deposition that "we argued everything." Keen at 42-43, 49, Collins at 31; A-110-111, 114, 126.

The issue that was ultimately dispositive of the grievance procedure was timeliness. The parties were in agreement that a grievant, or the union on behalf of a grievant, must file a "step one" grievance within fourteen days of notice of the action complained of. Plaintiff at 30, A-12; Plaintiff Dep. Ex. 4, A-30. On March 30, 2004, the Notice of Removal was delivered to the

- 6 -

Plaintiff's residential address by first class mail, and also sent certified mail. Ms. Wilson did not sign the certified mail receipt until April 6, 2004, and, according to Mr. Collins, whom she contacted that day, she told him that she had only received it on that date. Collins at 18-19; A- 121-122. While with Mr. Collins, she wrote a statement setting forth the grounds for her grievance, in which she asserted that she had received notice of her termination on April 6. Based upon her statements to him, Mr. Collins testified he was therefore under the impression that the grievance could be timely filed as late as fourteen days after April 6, or by April 20. Collins at 22; A-124. At the time the grievance was filed on April 16, 2004, he believed it was timely.

However, at the arbitration hearing and again at her deposition Plaintiff was shown the "Information for Pre-Complaint Counseling" form by which she initiated an Equal Employment Opportunity claim of retaliation in connection with her removal. Plaintiff at 25-26, A-277-278; Plaintiff Dep. Ex. 3; A-23. In her own handwriting on that form appears the following: "[on] March 31, 2004 I received a Letter of Removal." *Id.* As a result, April 13 was the last day for timely filing. At deposition, Ms. Wilson admitted both that she had received the notice on March 31, and that she was untruthful about that fact at the arbitration. Plaintiff at 16-17, 39; A 8-9, 13. She testified at deposition that she believed from the outset that the 14-day period started the day she signed the certified receipt. Plaintiff at 21; A-275. She testified twice that she could not recall whether she had told Mr. Collins that she actually received the Notice by first class mail on March 31 (Plaintiff at 24, 29; A-276, A-281), but then later, saying "now it's coming back to me," she "remembered" a telephone call in which she told Mr. Collins (or left a message for him) that she had received the first class letter on March 30 or 31. Plaintiff at 41;

A- 14. She could not remember the date of that alleged phone call. *Id*. In any event, she testified vaguely that Mr. Collins told her the date she signed the return receipt for the certified mail delivery (April 6) was the date that started the running of the 14-day period. Plaintiff at 27-28, 41; A-10-11, 14. She testified "in writing the statement, pretty much I was following what he told me was the proper thing to do. You received it when you signed for it. And I'm sitting right there in the [Union] office after leaving the Postal Service, and that's what he said, and that's what I wrote." Plaintiff at 27-28; A-10-11. Ms. Wilson was asked, "[d]o you have any knowledge that Mr. Collins's belief or telling you that [the 14-day period] begins on ... April 6, instead of March 30th or 31st was something Mr. Collins did purposefully or with bad intent or wanted the grievance not to be timely filed," to which she responded, "I have no idea." Plaintiff at 41; A-14. The follow-up question was, "[i]t's possible that he just made a mistake?" Answer: "[o]f course it is." Plaintiff at 49-50; A-287-288. Again, in response to the question "do you have any reason to believe, or knowledge, that Steve Collins of the Union would not have wanted you to prevail on the grievance or anything of that nature?" She answered "I don't know." Plaintiff at 52; A-289. Significantly, Plaintiff did *not* testify that Mr. Collins affirmatively told her to lie, to deny that she received the Notice by first class mail on March 31. Plaintiff at 24-29; A-276-281.

Mr. Collins testified that Ms. Wilson told him she first received the Notice of Removal on April 6th, that he trusted her to be truthful about the date on which she received it and that he had paid special attention to the timeliness issue, because of the seriousness of the discipline involved. Collins at 17, 19-20, 22, 34-35, 39, 44, 46-47, 49; A-120, 122-24, 127-28, 131, 134, 136-138.

- 8 -

The Step 1 grievance was denied on the merits on April 16, 2004; the Union appealed to Step 2 of the grievance procedure on April 19, 2004; the Step 2 grievance was denied on the merits and on timeliness on April 27, 2004; the matter went to arbitration on October 7, 2004; and the arbitrator's decision was issued on November 10, 2004. Plaintiff Dep. Ex. 6, A-36. The arbitrator found (and Plaintiff has now admitted) that Ms. Wilson's statement to EEO that she received the Notice of Removal on March 31 was credible, her statement that she saw the Notice for the first time on April 6 was not credible, and he therefore ruled the grievance untimely. *Id.* The arbitrator did not reach the merits. *Id.* It is the untimely filing of the grievance that forms the basis of Plaintiff's complaint against the Union, USPS's co-defendant.

## ARGUMENT

### Summary Judgment Standard

Pursuant to the Federal Rules of Civil Procedure, a court will grant summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Facts that could alter the outcome are material. *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n. 1 (3d Cir. 1995) (internal citations omitted). In applying this standard, the court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 S.Ct. 317, 322 (1986). To avoid summary judgment,

Plaintiff must present some evidence, more than a scintilla, enough that a jury could reasonably find for Plaintiff. *Id.; Woloszyn v. Lawrence County,* 396 F. 3d 314, 319 (3d Cir. 2005).

## I.    THE UNION DID NOT BREACH ITS DUTY OF FAIR REPRESENTATION

A material element Plaintiff must preliminarily prove, before the court can reach her wrongful discharge claim against the USPS, is that the Union breached its duty of fair representation to her. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 570-571 (1976); *Weber v. Potter*, 338 F.Supp. 2d 600, 606 (E.D.Pa. 2004). Plaintiff cannot prevail on her claim that the Union breached its duty of fair representation unless she produces evidence that the Union's conduct toward her was "arbitrary, discriminatory or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190 (1967). "A union's actions are arbitrary only if ... the union's behavior is so far outside a "wide range of `reasonableness' (citation omitted) as to be irrational." *Air Line Pilots Association International v. O'Neill*, 499 U.S. 65, 67 (1991). Conclusory allegations of bad faith, absent an affirmative showing by the Plaintiff, will not sustain her cause of action against the Union for breach of its duty. *Whitten v. Anchor Motor Freight, Inc.*, 521 F.2d 1335, 1341 (6th Cir. 1975), *cert. denied*, 425 U.S. 981 (1976).

Here, the evidence shows that the Union vigorously represented Plaintiff throughout the grievance process. Plaintiff herself said she believed Mr. Collins, as the Union representative, was trying to prevail on her behalf. Plaintiff at 37; A-282. Considering Plaintiff's testimony at the arbitration and then her contradictory testimony at deposition, the version of the facts that is "most favorable" to her is that she truthfully told the Union representative she received the Notice on March 31, and he incorrectly told her the 14-day period did not start to run until she signed the return receipt for the certified mail delivery on April 6. Even accepting that version of

the events as true, however, Mr. Collins' behavior does not amount to "arbitrary" or

"discriminatory" conduct, nor to a showing of "bad faith." Plaintiff admitted as much herself,

agreeing that Mr. Collins may simply have been mistaken. Plaintiff at 49-50; A-287-288. On

such facts, courts do not impose liability. *See e.g., Justison v. Nat'l Postal Mail Handlers, et al.*

815 F.Supp. 137 (D.De. 1993) (where former postal employee sued USPS and union, alleging,

*inter alia,* a violation of the union's duty of fair representation in its failure to timely filed her

grievance, Judge Schwartz ruled, "something more than negligence must be pled to constitute

arbitrary conduct for purposes of establishing a breach of the duty of fair representation" (*id.* at

140); failure to file Plaintiff's grievance timely "amounts only to mere negligence." *Id.*, relying

on *Air Line Pilots Asso. Int'l,* 499 U.S. at 67. *Accord, Lewis v. American Postal Workers Union,*

561 F.Supp. 1141 (W.D.Va. 1983) (shop steward missed grievance filing deadline only because

he was unfamiliar with the grievance procedure, which could be an honest mistake or the result

of carelessness, but did not rise to the level of arbitrariness necessary to show a breach in the duty

of fair representation); *Ethier v. United States Postal Service,* 590 F.2d 733 (8th Cir. 1979) (where

shop steward misconstrued time limits set forth in the collective bargaining agreement, union

would not be held liable for steward's failure to file grievance timely, as that failure did not

demonstrate the requisite arbitrary conduct).

Accordingly, taking the facts in the light most favorable to Plaintiff, she cannot carry her

burden of proving that the Union breached its duty to her. As a result of her inability to show

that the Union violated its duty to her, Plaintiff's claim against the USPS is doomed. It is clear

that, in order to recover from the USPS for a violation of a collective bargaining agreement, she

must first show that her Union breached its statutory duty of fair representation in handling her

grievance. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. at 570-571. The Union's breach is a

threshold legal issue, a "material fact," which must be shown before the Court can address the

merits of Plaintiff's claim of wrongful discharge by the USPS. *Vaca v. Sipes*, 386 U.S. at 186.

Because Plaintiff is unable to show the Union's breach, any claims against the USPS are barred.

*Weber v. Potter*, 338 F. Supp. 2d at 606. The USPS is entitled to summary judgment as a result

of Plaintiff's inability to carry her burden of proof on this threshold issue.

II.    **EVEN IF THE UNION BREACHED ITS DUTY, THE POSTAL SERVICE
       IS ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFF'S
       GRIEVANCE OF HER REMOVAL WAS NOT TIMELY FILED**

        The terms and conditions of Plaintiff's employment with the USPS were set forth in the

Agreement between the United States Postal Service and the National Association of Letter

Carriers, AFL-CIO, 2001-2006 ("Collective Bargaining Agreement" or "CBA"). The CBA

provides, in relevant part, as follows:

> **Article 15.2(a)**
>
> **Step 1:**
>
> (a)  Any employee who feels aggrieved *must* discuss the grievance with the
> employee's immediate supervisor within fourteen (14) days of the date on which
> the employee or the Union first learned or may reasonably have been expected to
> have learned of its cause. The employee, if he or she so desires, may be
> accompanied and represented by the employee's steward or Union representative.
> The Union also may initiate a grievance at Step 1 within 14 days of the date the
> Union first became aware of (or reasonably should have become aware of) the
> facts giving rise to the grievance.

Plaintiff's Dep. Ex.4, A- 31(emphasis added). Ms. Wilson has admitted that she received the

Notice of Removal on March 31, 2004 (Plaintiff at 25-26, A-277-278), and it is undisputed that

the grievance on her behalf was not initiated until April 16, 2004, sixteen days later. *See* Arbitrator's Award Summary, Plaintiff Dep. Ex. 6, A-36.

In support of the USPS position on this matter at arbitration, Mr, Keen brought to the arbitrator's attention several earlier cases dismissing grievances on the grounds of untimely filing. A-207-273. In the case of D. Calhoun (A-207, MW/010127-35) the arbitrator found that "management was within its right to deny this grievance on the timeliness issue." *Id.* The facts in that case showed that the Notice of Removal was received by the grievant on September 20, 2001; the union requested an extension on October 5, which request was denied. On October 9, 2001, management received the grievance by mail. Similarly, in the case of C. Davenport (A-216, MW/01036-42), the grievance was dismissed as untimely, having been filed more than 14 days after the grievant received a Notice of Removal. In the matter of B. Harcum, the grievance was also denied on grounds of untimeliness (A-223), as it was in the case of R. Brown (A-235, MW/01055-85). And finally, in the matter of R. Johnson, (A-266, MW/01086-42) the grievance was denied on a finding it was not arbitrable, because it was untimely filed.

Whether or not the untimely filing amounted to a breach of the Union's duty to Plaintiff, the fact of untimeliness is both undisputed and fatal to her claim, as recognized implicitly in *Justison,* 815 F.Supp. at 138; *Lewis,* 561 F.Supp. at 1143; *Ethier,* 590 F.2d at 735. Accordingly, because there is no genuine issue of material fact regarding the untimeliness of Plaintiff's grievance, the USPS is entitled to summary judgment.

### III.    THE USPS HAD "JUST CAUSE" TO TERMINATE PLAINTIFF'S EMPLOYMENT.

Article 16 of the CBA provides the procedures to be followed by the USPS in disciplining employees. *See* attached excerpts from CBA, A-140-145. In order to discipline an employee, the Postal Service must have "just cause." *Id.*, A-144-145. Disciplinary procedures are designed to be "corrective in nature, rather than punitive." *Id.*, A-148. The disciplinary process should be proportionate, *i.e.* the penalty should be appropriate for the offense, and progressive, which typically means counseling for an initial infraction, proceeding through "letters of warning, suspensions and ultimately removal." *Fleming v. United States Postal Service AMF O'Hare*, 1992 WL 22207 *1 (N.D.Ill. 1992). Accord Collins at 37, A-130, citing Supervisor's Guide to Handling Grievances ("EL-921"), excerpts attached at A-147-53.

However, it is not mandatory that, prior to removal, each step of the progressive disciplinary system be followed. The EL-921 specifically observes: "[r]emember, however, certain offenses may warrant discharge without prior progressive discipline." A-149. That fact has been noted by the Court of Claims, pointing out the CBA does not require that "a strict order of progressively harsher penalties be observed in every case. The agreement itself only speaks in generalities about the remedial goals of discipline." *Moten v. United States Postal Service*, 229 Ct. Cl. 796, 797 (Ct. Cl 1982). The plaintiff in *Moten* argued that his removal was excessive, he should only have been given a warning letter before being terminated for absenteeism The court found that the plaintiff's argument "confuses the *availability* of graded penalties for the *requirement* that each step be followed in every single case." *Id.* (emphasis added). *Accord, Bieche v. United States Postal Service*, 91 Fed. Appx. 149, 152 (Fed. Cir. 2004) (quoting the

CBA provision that "a basic principle shall be that discipline should be corrective in nature, rather than punitive." The court went on, "[o]n its face, the quoted passage does not *require* progressive discipline." (emphasis added).

The gist of the Union's argument on behalf of Ms. Wilson was that the discipline of removal from employment was unduly harsh; it was not corrective or progressive but instead was punitive. Collins at 23, 36-37; A-125, 129-30. It is true that in this case Plaintiff was subjected to the most severe discipline in response to the first occasion on which she was found to have misrepresented her medical condition and consequent restrictions. However, in light of the fact that the USPS found her misrepresentations to have been fraudulent, and to have continued for a period of years the USPS urges that no reasonable fact-finder would conclude that "just cause" for firing Plaintiff was lacking.

In support of just this argument at arbitration, Mr. Keen submitted several arbitrators' decisions finding just cause for removal where employees abused sick leave in order to work second jobs. In the case of D.M. Ariola, the arbitrator found that the USPS had just cause to remove the grievant when she worked a second job whose responsibilities required her to work beyond medical restrictions she had claimed for purposes of her job with the USPS, and had worked at that job while on sick leave. (A-156, MW/0976-989). In the case of "Massie," the arbitrator ruled that the USPS had just cause to remove the grievant when she misused FMLA leave, working at a second job. A-170, MW/0990-1004). In a matter identified only as Case No. C8T-4B-D-14101 (A-185), the arbitrator determined that the "grievant claimed sick leave when he was not entitled to it, and this is evidenced by the fact that he was working at another job... He cannot, on the one hand, claim inability to work [at the USPS] due to illness and then work at

- 15 -

another job anyway." (A-187, MW/01007). Again, in Case No. E4C-2L-D 3119 (A-188, MW/01008-1017), the arbitrator found that the USPS had just cause to terminate the grievant, where she worked at a second job while on sick leave from the USPS. Once more, in the matter of A. Batson (A-198, MW/01018-26), the arbitrator found just cause for terminating an employee who "had a pattern of requesting sick leave while working for another employer." (A-198, MW/01018).

Because, taking all the facts in the light most favorable to Plaintiff, there is no genuine issue of material fact regarding whether the USPS had just cause to remove Plaintiff from employment, summary judgment should be granted to the USPS as a matter of law.

## CONCLUSION

For the reasons stated and upon the authorities cited herein, the USPS respectfully moves the court to grant summary judgment in its favor.

<div style="margin-left: 40%">

Respectfully submitted,

COLM F. CONNOLLY
United States Attorney

By: /s/Patricia C. Hannigan
    Patricia C. Hannigan
    Assistant United States Attorney
    Delaware Bar I.D. No. 2145
    The Nemours Building
    1007 Orange Street, Suite 700
    P. O. Box 2046
    Wilmington, DE 19899-2046
    (302) 573-6277
    Patricia.Hannigan@usdoj.gov

</div>

OF COUNSEL:
Donna G. Marshall
Attorney
Eastern Area Law Office
United States Postal Service
P. O. Box 40595
Philadelphia, PA  19197-0595
(215) 931-5090
(215) 931-5092 (fax)


Dated:  **February 24, 2006**

## CERTIFICATE OF SERVICE

I hereby certify that on **February 24, 2006**, I electronically filed an **OPENING BRIEF OF THE UNITED STATES POSTAL SERVICE IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using CM/ECF.  Notification of such filing will be electronically mailed to the following:

**Joseph M. Bernstein, Esquire**
Delaware Bar I.D. No. 780
800 North King Street, Suite 302
Wilmington, DE 19801-3544
(302) 656-9850
jmbern001@comcast.net

ATTORNEY FOR PLAINTIFF

**A. Dale Bowers, Esquire**
The Law Offices of Joseph J. Rhoades
Delaware Bar I.D. No. 3932
1225 King Street, 12th Floor
Wilmington, DE 19801
(302) 427-9500
dale.bowers@rhoadeslegal.com

ATTORNEY FOR AMERICAN
POSTAL WORKERS UNION


COLM F. CONNOLLY
United States Attorney

By:   /s/Patricia C. Hannigan
      Patricia C. Hannigan
      Assistant United States Attorney
      Delaware Bar I.D. No. 2145
      The Nemours Building
      1007 Orange Street, Suite 700
      P. O. Box 2046
      Wilmington, DE 19899-2046
      (302) 573-6277
      Patricia.Hannigan@usdoj.gov