# APPENDIX
# TO

## OPENING BRIEF OF THE USPS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

                                                                            **PAGE**

Wilson Deposition Excerpts .......................................... A-0002

Selected Wilson Deposition Exhibits ................................. A-0018

Van Istendal Deposition Excerpts .................................... A-0063

Selected Van Istendal Deposition Exhibits ........................... A-0083

Drummer Deposition Excerpts ......................................... A-0095

Selected Drummer Deposition Exhibits ................................ A-0098

Keen Deposition Excerpts ............................................ A-0107

Selected Keen Deposition Exhibits ................................... A-0115

Collins Deposition Excerpts ......................................... A-0117

Collective Bargaining Agreement Excerpts ............................ A-0140

Handbook EL-921 Excerpts ............................................ A-0147

Arbitration Cases ................................................... A-0154

      Ariola .................................................. A-0156

      Massie .................................................. A-0170

      Case No. C8T-4B-D 14101 ................................. A-0185

      Case No. E4C-2L-D 31119 ................................. A-0188

      Batson .................................................. A-0198

      Calhoun ................................................. A-0207

      Davenport ............................................... A-0216

      Harcum .................................................. A-0223

**PAGE**

Brown . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-0235

Taylor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-0244

Johnson . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-0266

Wilson Deposition Excerpts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-0275

Keen Deposition Excerpts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-0290

# WILSON DEPOSITION

1    will let you finish your answer.  If at any time I

2    don't let you finish your answer, please let me know

3    and I'll certainly do that.  If at any time you need a

4    break, rest room, otherwise, please let me know.  We

5    are not here to keep you under any harsh conditions.

6              I think that's all the preliminary

7    matters.  Unless you have any questions about how we

8    are going to proceed, I will move on.

9    A.    No questions.

10   Q.    Okay.  Thank you.

11             Ms. Wilson, when were you hired by the

12   United States Postal Service?  What was your date of

13   hire?

14   A.    April 25th, 1985.

15   Q.    Were you hired as part time, flexible?

16   A.    Yes.

17   Q.    Were you hired into the clerk craft?

18   A.    Yes.

19   Q.    And from what position were you hired into?

20   A.    LSM operator.

21   Q.    And am I correct that the LSM is a letter

22   sorting machine?

23   A.    Correct.

24   Q.    And did you join the Union?



1    A.    The Wilmington, Delaware, P&DC.

2    Q.    And for clarity on the record, due to the fact

3    that the Postal Service has a language all of its own,

4    does P&DC stand for processing and distribution

5    center?

6    A.    Yes.

7    Q.    And there are several hundred employees that

8    work at the P&DC, is that correct?

9    A.    Yes.

10    Q.    It's a large facility.

11          In 1992 what position did you move to in

12    the Postal Service?

13    A.    I was in limited-duty status position as a

14    manual letter sorter.

15    Q.    And can you explain to the best of your ability

16    your understanding of what a limited-duty position is?

17    A.    Yes.  A limited-duty position is a position

18    that the Postal Service sort of makes for an employee

19    who's had an on-the-job injury where they accommodate

20    them for their eight hours of work because of an

21    injury sustained on the job.

22    Q.    So I assume by the fact that you moved into a

23    limited-duty position you sustained an injury on the

24    job?



1    A.    Correct.

2    Q.    Can you tell me about that injury, please?

3    A.    Yes.  I had ganglion cysts, or I had developed

4    ganglion cysts on both my left and right wrists from

5    repetitive usage of both wrists due to the sorting of

6    the LSM machine that I was currently working on at

7    that time.

8    Q.    Now, is this different from carpal tunnel

9    syndrome, if you know?

10   A.    Yes.

11   Q.    Nevertheless, you put in for an injury on the

12   job, and it was approved at some time?

13   A.    Yes.

14   Q.    From what time period did you serve as a manual

15   letter sorter?

16   A.    I -- from 1992, November approximately up until

17   June of 2002 when I -- up until about June 2002.

18              MS. HANNIGAN:  I'm sorry.  I didn't hear

19   that.

20              THE WITNESS:  Up until about June 2002.

21              (Discussion off the record.)

22   BY MR. LEFF:

23   Q.    During this time period were you working eight

24   hours a day?



WILCOX & FETZER LTD.
Registered Professional Reporters

1    A.    Yes.  Or more.

2    Q.    To what position did you move in June 2002?

3    A.    Flat sorter clerk.

4    Q.    And is a flat sorter another machine?

5    A.    Yes.

6    Q.    And at this time period in June 2002, were you

7    still on limited duty or did you move off limited

8    duty?

9    A.    I moved off.

10    Q.    And from what time period did you act as a flat

11    sorter clerk?

12    A.    From June 2002 until October 2002.

13    Q.    And where did you move in October 2002?

14    A.    Back to a manual letter sorting.

15    Q.    And is that the result of another on-the-job

16    injury or recurrence of your previous on the job --

17    A.    A recurrence of previous injuries.

18    Q.    And you resubmitted for limited duty, and it

19    was approved, is that correct?

20    A.    Yes.

21    Q.    For what time period did you serve that second

22    stint as manual letter sorter, sorting clerk?

23    A.    From October 2002 until I was -- until

24    February -- what is it?  March 10, 2003.



**WILCOX & FETZER LTD.**
Registered Professional Reporters

1      Q.    What happened on March 10, 2003?

2      A.    I was called into the office by Carla

3   Van Istendal and asked about my outside employment and

4   afterwards asked to leave the building on March 10.

5      Q.    Now, I just want to make sure the year is

6   correct.  Is that March 10, 2003, or March 10, 2004?

7   I'm not here to trick you.

8      A.    Right.

9      Q.    Your notice of removal states March 24, 2004.

10  Did this occur a year before or --

11     A.    No.  No.  I'm sorry.  I'm sorry.  It is 2004.

12     Q.    At any point did you act as a 204-B supervisor?

13     A.    Yes.

14     Q.    And can you tell me approximately -- well,

15  first, let me back up.  What is your understanding of

16  what an 204-B supervisor is?

17     A.    It's a supervisor, acting supervisor where

18  you're like training to become one.

19     Q.    And did you go into the 204-B supervisor

20  training program or were you just appointed acting

21  204-B supervisor?

22     A.    Just appointed.

23     Q.    Now, is it your understanding that, while you

24  are a 204-B supervisor, you have all of the duties and



WILCOX & FETZER LTD.
Registered Professional Reporters

1      A.    Okay.

2      Q.    The document that's been handed to you,

3    Ms. Wilson, designated exhibit 1, can you please tell

4    me your understanding of what that document is?

5      A.    This is a notice of removal.

6      Q.    And is this the notice of removal that you

7    received indicating to you that you had been removed

8    from the Postal Service?

9      A.    I believe this is the one.

10      Q.    Now, the date on it is March 24th, 2004.  To

11    your recollection, you did not receive that on March

12    24, 2004, is that correct?

13      A.    No.    That's correct.

14      Q.    Do you recall when you first received this

15    document?

16      A.    I believe that I first received the document by

17    regular mail on approximately the 30th or the 31st of

18    March.

19      Q.    Now, I want to make sure the record is clear on

20    this.  Is March 30th or 31st of March when you opened

21    up a first class envelope and read the notice of

22    removal?

23      A.    Yes.

24      Q.    Now, at some point you also received the letter



WILCOX & FETZER LTD.
Registered Professional Reporters

1    by certified mail, is that correct?

2    A.    Yes.

3    Q.    Do you recall on what date that you received it

4    by certified mail?

5    A.    Yes.  I received it on April 6, 2004.

6    Q.    Do you recall when you first received the

7    notice that there was a certified mail letter

8    containing the notice of removal delivered to you?

9    A.    Can you be --

10   Q.    Let me ask you this.  Okay.

11              When you picked up the certified mail

12   letter, was that delivered to your home or did you go

13   to the Postal Service and pick it up?

14   A.    I went to the Postal Service to pick it up.

15   Q.    You were notified that a certified letter was

16   waiting for you at the Postal Service, is that

17   correct?

18   A.    Yes.

19   Q.    Do you recall when you first received that

20   notice?

21   A.    I received the notice the same day I picked the

22   letter up out of the first class mail on the 31st or

23   the 30th.  It was on a weekend.

24   Q.    Okay.  Do you recall why, or was there any



**WILCOX & FETZER LTD.**
Registered Professional Reporters

1    answer or I left a message. And when I got to Steve

2    or when I finally got in touch with Steve on the 6th

3    and he informed me to come right away, in my mind it

4    went back to I received it when I signed for it.

5        Q.  Now, you filled this out on April 10, 2004, is

6    that correct?

7        A.  Yes.

8        Q.  Turning to exhibit number 2, if you wrote a

9    statement to the Union that you received the notice of

10   removal on April 6, 2004, in your opinion, was the

11   Union wrong to believe that they had until April 20th,

12   2004, to file the grievance?

13       A.  I believe that the Union was wrong, yes,

14   because of being as though I was speaking with the

15   president, and this instance, he should have known the

16   rule book or the rules governing a grievance and its

17   timely filing, no matter what the situation or

18   circumstance. So in going there on the 6th, Steve

19   Collins told me himself that, no, your receipt of the

20   letter is the date you signed for it. Therefore, your

21   statement is -- you know, that is what you can say.

22           So, in writing in the statement, pretty

23   much I was following what he told me was the proper

24   thing to do. You received it when you signed for it.



1    And I'm sitting right there in the office after

2    leaving the Postal Service, and that's what he said,

3    and that's what I wrote.

4       Q.    So I want to make sure I understand you.

5    You're saying that Steve Collins told you that the

6    date that the time limits for filing a grievance begin

7    the day that you receive the notice of removal,

8    correct?

9       A.    That I signed for it.  Receiving meaning a

10   certified receipt of some sort or the fact that I got

11   it by signing something.

12      Q.    So Steve Collins told you that the date that

13   you signed for a notice of removal is the day that

14   starts the running of the 14-day time limit?

15      A.    Yes.

16      Q.    He told you that before or after you wrote the

17   statement to your recollection?

18      A.    Before.

19      Q.    So based on what he stated to you, you wrote

20   that you received the notice of removal on April 6,

21   2004, and you were relying on his statement the day

22   that you signed for it is the day that starts the time

23   limits, is that correct?

24      A.    Correct.



1       Q.    I want to turn your attention to article 15,

2    section 2, step 1 of the collective bargaining

3    agreement.  Had you read the grievance and arbitration

4    procedure before?

5       A.    Yes.  I had read it before.

6       Q.    And were you familiar with section 2, step 1-A

7    that says, "Any employee who feels aggrieved must

8    discuss the grievance with the employee's immediate

9    supervisor within 14 days of the date on which the

10   employer or Union first learned or may reasonably have

11   been expected to learn of its cause."

12      A.    Yes.

13      Q.    But you're telling me you didn't know that an

14   employee can initiate the grievance procedure by

15   talking to his supervisor at step 1?

16      A.    Correct.

17      Q.    Were you aware that Steve Collins requested

18   numerous categories of information from the Postal

19   Service with respect to the grievance over your

20   removal?

21      A.    No.  I just would assume that he would because

22   I come to him to file the grievance.  So it's part of

23   it.

24              MR. LEFF:  Make this exhibit 5 please.



WILCOX & FETZER LTD.

Registered Professional Reporters

1       testimony established that the grievant actually

2       received the notice of removal contained in the first

3       class mailing on or before March 31st, 2004."

4               During the arbitration hearing did you

5       testify that you had received the notice of removal by

6       first class mail on March 30th or 31st?

7       A.    I don't think I did.

8       Q.    Do you recall if you were asked that question?

9       A.    Yes.  I recall that I was asked that question.

10      Q.    Is there any particular reason that you did not

11      testify that you received the notice of removal on

12      March 30th or 31st by first class mail?

13      A.    No.

14      Q.    Did you testify during the arbitration hearing

15      that the first time you had received the notice of

16      removal is when you signed for the certified letter on

17      April 6?

18      A.    I believe that is what I said at the

19      arbitration.

20      Q.    Was that honest?

21      A.    No.

22      Q.    Is there any particular reason why you weren't

23      being honest in that testimony?

24      A.    Well, I was under the impression that



1    letter.  You need to go and get it and sign for it

2    because you have 14 days.  And you don't want to mess

3    up because I've had a case where somebody didn't pick

4    up their stuff and they still went through.  So pick

5    the letter up.

6              So, yes, I did tell him that I got the

7    letter -- but on the -- by phone.

8      Q.    So you actually had a telephone conversation

9    with Steve Collins before April 6?

10     A.    Yes.  Now it's coming back do me, yes.

11     Q.    And do you recall the date that you had this

12   conversation?

13     A.    Cannot recall the date.

14     Q.    So during this telephone conversation, you told

15   Steve Collins that you received a letter by first

16   class on March 30th or 31st?

17     A.    Yes.  Mm-hmm.

18     Q.    But you told him you not received the certified

19   letter yet?

20     A.    I hadn't -- yeah.  Had a pink slip in my box.

21   I let him know I had a pink slip.

22     Q.    Do you recall whether you called Steve Collins

23   at the union office or on his cell phone?

24     A.    Probably both.



1      Q.    Ms. Wilson, I'm going to put what's been marked

2    Wilson 19 in front of you.  I'm going to represent to

3    you that I think that every piece of paper in here is

4    associated with and was provided by your physician,

5    Dr. Ivins, but I would like you to take a look through

6    this and tell me if that was your understanding as

7    well and then we'll go through them one at a time.

8             Does it appear to you as though each of

9    those documents is something provided to the Postal

10   Service by you or by Dr. Ivins in connection with your

11   medical condition?

12     A.    Yes.

13     Q.    The documents that Dr. Ivins prepared, filling

14   in the forms, signing, did he do that at your request?

15     A.    Yes.

16     Q.    And the information that he provided that then

17   went to the Postal Service, was that based upon what

18   you told him?

19     A.    Yes.  And plus the job description that I would

20   take to him.

21     Q.    Now, is it correct that, as a result of the

22   information provided at your request by Dr. Ivins that

23   the Postal Service, in fact, accommodated you in

24   several ways?



1      A.    That is correct.

2      Q.    And one of those accommodations was that you

3   were not required to stand during your work hours?

4      A.    Yes.

5      Q.    And one of them was that you were not required

6   to lift more than ten pounds?

7      A.    Yes.

8      Q.    One was that you were not required to do

9   anything that involved repetitive motion?

10     A.    Yes.

11     Q.    And one was that you were permitted to work

12   only the day shift?

13     A.    Yes.

14     Q.    If I could have that back, please.

15           MS. HANNIGAN:   If we could mark this one,

16   please.

17           (Wilson Deposition Exhibit 20 was marked

18   for identification.)

19   BY MS. HANNIGAN:

20     Q.    Again, Ms. Wilson, I'm going to put in front of

21   you what's been marked Wilson 20, and I'll represent

22   to you that I believe that these four pages are all

23   related to your employment at Boscov's, but would you

24   look through them and tell me if you agree.

1      Q.    Were you concerned when you told Boscov's that

2    you could work from three-thirty or four to close that

3    that was inconsistent with Dr. Ivins's statement that

4    you needed day work only?

5      A.    No, because that day work request was back in

6    2000 or 2002, and I was no longer under, having had

7    the workday shift.   That documentation was from like

8    2000 or 2002.   I was no longer under those

9    restrictions of day shift only.

10     Q.    When did Dr. Ivins lift that restriction?

11     A.    I'm not sure when he actually lifted it.

12     Q.    Did you ever tell the Postal Service that you

13   were no longer under that restriction?

14     A.    No, I didn't.

15     Q.    Now, if you look at page 2 of exhibit 20, you

16   see two-thirds of the way down maybe, it says,

17   "Physical Demands/Working Conditions"?

18     A.    Yes.

19     Q.    And do you see, it says, "Standing, stooping,

20   bending, reaching, climbing, twisting/turning,

21   lifting/carrying (up to 50 pounds)."   Do you see where

22   I'm reading?

23     A.    Yes, I do.

24     Q.    Were you concerned that those job requirements



Delaware P&DC

**COPY**

 **UNITED STATES**
**POSTAL SERVICE**

Date:        March 24, 2004

Subject:     **Notice of Removal**

To:          Melinda Wilson          FTR Clerk
             28 Ashley Drive         DE P&DC
             New Castle DE 19720-3962

Certified ___7003 1010 0001 1223 5956___
+ 1 copy via first class mail

You are hereby notified that you will be removed from the Postal Service no sooner than thirty (30) days from your receipt of this notice. The reasons for this action are:

**CHARGE:    Improper Conduct**

An investigation into your conduct reveals that while employed by the US Postal Service, you were also working a second job at the Boscov's department store. A review of your work hours and your leave requests indicates the following:

On 11/5/03 you reported to work for the Postal Service at 6:59am. You completed a PS Form 3971 for paid sick leave and left work at 1:02pm. You also indicated on the leave slip that you requested the leave be coded as leave under the Family and Medical Leave Act (FMLA). That same day, you worked at Boscov's department store from 4:59pm to 9:51pm. When questioned about this date, you replied that you could not recall the reason you left on sick leave, and you could not recall if you worked at Boscov's that day.

On 12/5/03 you called at 6:09 am and reported that you would be unable to report for duty at the Postal Service due to illness and requested paid sick leave. You requested the leave be coded as leave under the Family and Medical Leave Act (FMLA). That same day, you worked at Boscov's from 5:56pm to 10:05pm. When questioned about this date, you replied that you could not recall the reason why you could not report for duty at the Postal Service, and you could not recall if you worked at Boscov's that day.

On 12/12/03 you left work at the Postal Service at 3pm and completed a PS From 3971 requesting paid sick leave. You requested the leave be coded as leave under the Family and Medical Leave Act (FMLA). That same day, you worked at Boscov's from 3:18pm to 8:58pm. When questioned about this date, you replied that you could not recall the reason why you left on sick leave at 3pm, and you could not recall if you worked at Boscov's that day.



DEPOSITION EXHIBIT
Wilson 1
10-7-05

P.02



- 2 -

On 12/18/03 you called at 6:05am and reported that you would be unable to report for duty at the Postal Service due to illness and requested paid sick leave. You requested the leave be coded as leave under the Family and Medical Leave Act (FMLA). That same day, you worked at Boscov's from 4:24pm to 10:02pm. When questioned about this date, you replied that you could not recall the reason why you could not report for duty at the Postal Service, and you could not recall if you worked at Boscov's that day.

On 12/19/03 you called at 7:21am and reported that you would be unable to report for duty at the Postal Service due to illness and requested paid sick leave. You requested the leave be coded as leave under the Family and Medical Leave Act (FMLA). That same day, you worked at Boscov's from 4:42pm to 10:27pm. When questioned about this date, you replied that you could not recall the reason why you could not report for duty at the Postal Service, and you could not recall if you worked at Boscov's that day.

On 12/20/03 you called at 6:20am and reported that you would be unable to report for duty at the Postal Service due to illness and requested paid sick leave. You requested the leave be coded as leave under the Family and Medical Leave Act (FMLA). That same day, you worked at Boscov's from 4:24pm to 11:39pm. When questioned about this date, you replied that you could not recall the reason why you could not report for duty at the Postal Service, and you could not recall if you worked at Boscov's that day.

When you were questioned as to why you took sick leave at the Postal Service on the same days that you were working at Boscov's, you replied that you could not recall.

The Employee and Labor Relations Manual (ELM) states:

*513.312 Restriction An employee who is in sick leave status may not engage in any gainful employment unless prior approval has been granted by appropriate authority (see 661, Code of Ethical Conduct).*

*661.42 Conflicts of Interest — Employment An employee may not engage in outside employment or other outside activity that is not compatible with the full and proper discharge of the duties and responsibilities of Postal Service employment. No employee will engage in outside employment which impairs mental or physical ability to perform Postal Service duties and responsibilities acceptably.*

*666.2 Behavior and Personal Habits Employees are expected to conduct themselves during and outside of working hours in a manner which reflects favorably upon the Postal Service. Although it is not the policy of the Postal Service to interfere with the private lives of employees, it does require that postal personnel be honest, reliable, trustworthy, courteous, and of good character and reputation. Employees are expected to maintain satisfactory*

- 3 -

*personal habits so as not to be obnoxious or offensive to other persons or to create unpleasant working conditions.*

Your actions have violated these provisions of the ELM.

You have the right to file a grievance under the grievance/arbitration procedure set forth in Article 15 of the National Agreement within 14 days of your receipt of this notice.

If this action is reversed or modified on appeal, back pay may be allowed unless the appropriate award or decision specifies otherwise, only if you have made reasonable efforts to obtain alternate employment during the potential back pay period. The documentation which you must maintain and present to support a back pay claim is described in Part 436 of the Employee and Labor Relations Manual.


Linda Drummer
Supervisor, Distribution Operations

Carla Van Istendal
Manager, Distribution Operations
(Concurring official)


Attachments (ELM 436)
SF 8


cc:    OPF
       Labor Relations
       File



DEPOSITION
EXHIBIT
Wilson 2
10-7-05

I, Melinda Wilson, am grieving the fact that I was issued a letter of removal dated March 24, 2004 that I received on April of 2004. The Removal is for the charge of Improper Conduct.

First of all I didn't know having a second job was improper conduct because I know several employees as well as managers who have second jobs. I am being disciplined for taking FMLA which I am approved for and the dates mentioned in the Removal, I received approved 3971's from my supervisor for all these dates.

Furthermore, my Supervisor Linda Drummer, never had a discussion with me that I might be violating any contractual rules. She had the opportunity to discuss whatever she wanted with me but she never did. My supervisor knew of my employment in December, yet she never discussed this with me. This punishment in punitive rather than corrective and I want to be made whole with all back pay and benefits.

Also has an attendance check been given to every employee who has a second job white employed also at the Postal Service?

As for the DIC given to me on March 10, 2004, I felt that it was very unfair. Why was Carla Van Edena there writing down questions for my Supervisor Linda Drummer to ask me? Shop steward Pat McFough

P-4

A-0021

was my representative and will testify to this. I did not know what the DIC was really about. I was asked about specific dates in which I had called out FMLA and I told Linda that I could not recall these dates. If she had given me copies of my 3971's it would have helped me recall the absences.

I suffer from chronic asthma and this is documented in the FMLA director's office. On the dates in question I was suffering from attacks quite regulary and needed treatments and meds. I took my treatments and felt better in the evenings therefore I went to work at Boscov's.

On 12/2/03, when I left at 3pm, and I was feeling sick and went home to get my medication and I got it and went to work at Boscov's at 3:18 but still I had to leave early that day because I was still suffering asthmatic symptoms. I left at 8:58pm.

Mostly this punishment is too severe when all Linda Drummer had to do in December of 2003 was call me in and discuss my employment or absences with me. She never let me know that there was a problem and she could have.

C L 4-7-04
Wilson Melinda

P-5

A-0022

| U.S. Postal Service | Certified Mail No. 7001 2510 0001 1376 8198 | Date Mailed 04/01/2004 | or  Hand Delivered on |
|---|---|---|---|
| Information for Pre-Complaint Counseling | By (Initials) MAZ | Case No. | |

On __March 31, 2004__ you requested an appointment with a Dispute Resolution Specialist.
    (Month, Day, Year)

**Important: Please read.** You should complete this form and return it to the EEO office *within* 10 calendar days of receipt. This is the only notification that you will receive regarding the necessity for you to complete this form.

### A. Requester Information

| Name (Last, First, MI)  WILSON, MELINDA G. | Social Security No. 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 | Home Telephone No. (302) 395-4854 |
|---|---|---|

Your Mailing Address
28 ASHLEY DRIVE, NEW CASTLE DE 19720-3962

| Name of Postal Facility Where You Work  Wilmington Delaware PDC | Office Telephone No.  802 323 -2281 |
|---|---|

| Address of Postal Facility  147 Quigley BLVD | Email Address*  M |
|---|---|

| Employment Status (Check One)  ☐ Applicant  ☐ Casual  ☐ TE  ☒ Career | Position Title  FSM Clerk | Grade Level  5 |
|---|---|---|

| Pay Location  215 | Tour  2 | Duty Hours  7 - 3:30 pm | Off Days (If Tour I, Show Nights Off)  Sun / Mon | Time in Current Position  2 Years ___ Months |
|---|---|---|---|---|

| Your Supervisor's Name  Linda Drummer | Supervisor's Title  SDO | Supervisor's Telephone No.  (302) 323 2281 |
|---|---|---|

*Providing this information will authorize the U.S. Postal Service to send you important documents electronically.

### B. Discrimination Factors

Prohibited discrimination includes actions taken based on your *Race, Color, Religion, Sex, Age (40+), National Origin, Physical and/or Mental Disability, or in Retaliation (actions based on your participation in prior EEO activity)*. These categories are referred to on this form as factors.
What factor(s) of Discrimination are you alleging? (Please be specific, i.e., Race-African American, Sex-Female).

Retaliation

---

**For Retaliation Allegations Only.** If you are alleging retaliation discrimination, provide the date(s) and specifics of the EEO activity that you feel caused you to be retaliated against.

1. On _12-24-03_, I engaged in EEO activity. Case No.: _1C-081-0019-04_
       (Month, Day, Year)

2. On _____, I engaged in EEO activity. Case No.: _____
       (Month, Day, Year)

DEPOSITION EXHIBIT
Wilson 3
a 10-7-05

### C. Description of Incident/Action

Please use the space below to briefly describe the incident or action that prompted you to seek EEO counseling at this time.

On __March 31__, 20__04__
    Month, Day         Year

I received a letter of Removal issued by Linda Drummer and concurred with by Carla Van Istendal. The charge is "Improper Conduct" First of all, Ms Van Istendal is the concurring official to this discipline and she also was a part of the Day in Court given on March 10, 2004 with both Linda Drummer + Carla Van Istendal present. These charges are outrageous. I called out FMLA and it was approved. Now 3 & 4 Months after the fact they remove me. Many Postal Employee have outside employment and their records were not concurrng to the postal attendance records and they were not removed. This is retaliation + harassment on the part of the Postal Service because of my previous complaints.

PS Form 2564-A, March 2001 (Page 1 of 3)

A-0023

## D. Comparisons

Explain why, based on the factors you cited in Section B, you believe that you were treated differently than other employees or applicants in similar situations

_Anthony Greiner_
(Name of Employee)

_White - male has or paid outside employment and uses_
Factor(s) that describe the employee, i.e., sex (male), National Origin (Hispanic)

was treated differently than I when: _he calls out FMLA and go to his other Job. Was his attendance records seized and he ~~terminated AED~~ Was not removed form the postal service_

²_Maryann Campbell_
(Name of Employee)

_Black - Female - Manager (SDO) Tour 2_
Factor(s) that describe the employee, i.e., sex (male), National Origin (Hispanic)

was treated differently than I when: _She had outside employment and called out on leave and went to her other jobs. She was not Fired_

_Curtis Phillips_
(Name of Employee)

_Black - Male_
Factor(s) that describe the employee, i.e., sex (male), National Origin (Hispanic).

was treated differently than I when: _he had outside employment and called out, yet went to his other Job. He was not removed from the Postal Service._

4 _Oliver Wallace  -  Black Male - SDO Tour 3`
he has outside employment and is sick often and his attendance records are complete._

## E. Official(s) Responsible for Action(s)

List the name(s) of the official(s) who took the action that prompted you to seek counseling at this time.

| 1a. Name _Linda Drummer_ | b. Title _SDO    Tour 2_ |
|---|---|
| c. Office _Wilm DE P&DC_ | d. Grade Level |
| 2a. Name _Carla Van Istendal_ | b. Title _MDO    Tour 2_ |
| c. Office _Wilm DE P&DC_ | d. Grade Level |

Retaliation Allegations Only: Was/were the official(s) listed in Section D aware of your prior EEO activity?

☐ No ☒ Yes   If yes, explain how the official(s) became aware: _Carla was aware on 12/24/03 when I made the call from her office in her presence and ☒ in the presence of Shop Steward Leon Tucker. Carla is Linda Drummers Supervisor So I'm sure she informed my Supervisor Linda Drummer._

## F. Resolution

What are you seeking as a resolution to your pre-complaint? _$300,000.00 in damages. To be made whole as a Postal Employee with all Back-Pay and benefits and the harassment to ~~stop~~ immediately._

## G. Grievance/MSPB Appeal

On the incident that prompted you to seek EEO counseling, have you:

1. Filed a grievance on the same issue?   ☐ No   ☒ Yes   If yes, _April 6_ _____
   (Date)                          (Current Step)

2. Filed a MSPB appeal on this issue?   ☒ No   ☐ Yes   If yes, _____
   (Date Appeal Filed)

PS Form 2564-A  March 2001 (Page 2 of 2)

## H. Anonymity

You have the right to remain anonymous during the pre-complaint process.

Do you desire anonymity? ☒ No    ☐ Yes

## I. Representation

You have the right to retain representation of your choice. *(check one)*

☐ I waive the right to representation at this time.    ☒ I authorize the person listed below to represent me.

| Name of Representative | Representative's Title |
|---|---|
| Charles Szymanski | Attorney |
| Organization | Telephone Number |
| Law offices | (215) 875-3100 |   Email Address•

Mailing Address *(Street or P.P. Box, City, State and Zip +4)*

121 South Broad St   11th Floor   Philadelphia, PA 19107-4545

• Providing this information will authorize the U.S. Postal Service to send your representative important documents electronically.

## J. Documentation

Please attach any documentation you wish to submit to support your allegation(s). Include a copy of any written action(s) that caused you to seek counseling at this time.

Note: If you are alleging mental and/or physical disability, it is important for you to submit medical documentation of your disability during the pre-complaint process.

## K. Privacy Act Notice

Privacy Act Notice. The collection of this information is authorized by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e-16; the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 633a; the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794a; and Executive Order 11478, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which the USPS is a party or has an interest; to a government agency in order to obtain information relevant to a USPS decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations, contracts, licenses,

grants or other benefits; to a congressional office at your request, to an expert, consultant or other person under contract with the USPS to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of USPS finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the National Labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant, and for Postal Service employees and other witnesses.

## L. Authorization

I am aware that the claim(s) contained herein shall by-pass the pre-complaint process *if* like or related to a formal complaint that I have already filed, or *if* the claim(s) constitutes a spin-off complaint. (A spin-off complaint contests the manner in which a previously filed complaint is being processed.) In completing this PS Form 2564-A, *Information for Pre-complaint Counseling*, I recognize that the Manager, Dispute Resolution will review the claim(s) contained herein and determine how they shall be processed. I will be notified, in writing, if the Manager determines that my claim(s) shall be processed as amendments or appendages to a formal complaint that I have already filed.

Please print your name here

Melinda G. Wilson

Your Signature

Melinda G. Wilson

Date signed 4/10/04

**Please return this form to:**

MANAGER EEO DISPUTE RESOLUTION
U S POSTAL SERVICE
P O BOX 9001
BELLMAWR NJ 08099-9411

PS Form 2564-A, March 2001 *(Page 3 of 3)*

U.S. Postal Service
## Agreement to Participate in REDRESS™, an Alternative Dispute Resolution Process



RECEIVED

APR ? 0 2004

MGR EEO DISPUTE RESOLUTION
SOUTH JERSEY DISTRICT

| Case No. | |
|---|---|
| Date Initiated | MARCH 31, 2004 |

I, __MELINDA G. WILSON__ , have been advised that, in accordance with 29 C.F.R. §1614.105(f), I have the option of participating in mediation instead of the counseling process. The EEO complaints processing office has given me information about the mediation procedure, and I voluntarily agree to participate in REDRESS™ mediation during the pre-complaint processing period. I am aware that REDRESS™ mediation sessions are confidential, and that resolutions reached during the procedure are handled in the same manner as are resolutions reached during the counseling process. In signing this agreement, I acknowledge that the pre-complaint processing period will be 90 calendar days. If the matter that I brought to the dispute resolution specialist's attention has not been resolved before the 90th day, I have the right to file a formal complaint at any time thereafter up to 15 calendar days after receiving my notice of right to file a discrimination complaint.

### Privacy Act Notice

Privacy Act Notice. The collection of this information is authorized by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e-16; the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 633a; the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794a; and Executive Order 11478, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which the USPS is a party or has an interest; to a government agency in order to obtain information relevant to a USPS decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations, contracts, licenses, grants or other benefits; to a congressional office at your request, to an expert, consultant or other person under contract with the USPS to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of USPS finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the National Labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant, and for Postal Service employees and other witnesses...

| Signature of Counselee | Date |
|---|---|
| Melinda Wilson | 4/10/02 |

PS Form 2567-B, March 2001



MGR EEO DISPUTE RESOLUTION
SOUTH JERSEY DISTRICT

U.S. Postal Service

## Agreement to Extend 30-Day EEO Counseling Process

| | |
|---|---|
| Case No. | |
| Date of Contact | March 31, 2004 |

I, **MELINDA G. WILSON**, hereby agree to postpone the final interview and to extend the informal counseling process for a period up to 60 additional days. In signing this agreement, I understand that I retain my right to file a formal complaint if the matter(s) which I raised during counseling is not resolved within 90 calendar days from the date of my first contact with the EEO Office, and at any time thereafter up to 15 calendar days after my receiving my notice of right to file a discrimination complaint.

## Privacy Act Notice

The collection of this information is authorized by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e-16; the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 633a; the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794i; and Executive Order 11478, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which the USPS is a party or has an interest; to a government agency in order to obtain information relevant to a USPS decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency or its request when relevant to its decision concerning employment, security clearances, security or suitability investigations, contracts, licenses, grants or other benefits; to a congressional office at your request, to an expert, consultant or other person under contract with the USPS to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of USPS finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the National Labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant, and for Postal Service employees and other witnesses.

| Signature of Counselee | Date |
|---|---|
| *Melinda Wilson* | 4/9/04 |

PS Form 2567-A, March 2001

U.S. Postal Service
**Representation/Anonymity**

Case No.

**Representation**

The EEO Dispute Resolution Specialist has informed me that I am entitled to representation of my choosing.

[X] I authorize to represent me:

_Charles Szymanski - Law Offices of Markowitz and Richma_
Name and Title of Representative

_121 South Broad St     11th Floor_
Street Address

_Philadelphia, PA     19107_
City/State/ZIP + 4

_(215) 875 - 3100_
Area Code and Telephone Number          Email Address

[ ] I waive representation at this time.

I understand that I must immediately notify the Manager, EEO Compliance and Appeals, located in my area, in writing, if at any time during the administrative processing of my complaint, I designate a representative and/or change the representative I have designated above. (Employees at Postal Service Headquarters and Headquarters Field Units, and employees of the Inspection Service should notify the EEO Appeals Review Specialist at Headquarters.)

**Anonymity**

The EEO Dispute Resolution Specialist has informed me of my right to remain anonymous during the informal processing stage.

[ ] I elect to remain anonymous.

[X] I waive anonymity.

RECEIVED
MGR EEO DISPUTE RESOLUTION
SOUTH JERSEY DISTRICT

**Privacy Act Notice**

**Privacy Act Notice.** The collection of this information is authorized by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e-16; the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 633a; the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794a; and Executive Order 11478, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which the USPS is a party or has an interest; to a government agency in order to obtain information relevant to a USPS decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations, contracts, licenses,

grants or other benefits; to a congressional office at your request, to an expert, consultant or other person under contract with the USPS to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of USPS finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the National Labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant, and for Postal Service employees and other witnesses.

Counselee's Signature

Date

PS Form 2584, March 2001




RECEIVED

MGREED DISPUTE RESOLUTION
SOUTH JERSEY DISTRICT

25 Ashby DE
New Castle DE
19720

Maureen McManus
McReed Dispute Resolution
USPS South Jersey District
P.O Box 9001
Bellmaur, N.J. 08099-9411

08099/9321

# COLLECTIVE BARGAINING AGREEMENT

Between
**American
Postal Workers
Union, AFL-CIO**

And
**U.S. Postal Service**

**November 21, 2000
November 20, 2003**





PENGAD-Bayonne, N.J.

DEPOSITION
EXHIBIT

Wilson 4
10-7-05



Blumberg No. 5119

EXHIBIT

Ar  15.1

### Section 9. Field Federal Safety and Health Councils

In those cities where Field Federal Safety and Health Councils exist, one representative of the Union who is on the Local Safety and Health Committee in an independent postal installation in that city and who serves as a member of such Councils, will be permitted to attend the meetings. Such employee will be excused from regularly assigned duties without loss of pay. Employer authorized payment as outlined above will be granted at the applicable straight time rate, provided the time spent in such meetings is a part of the employee's regular work day.

(The preceding Article, Article 14, shall apply to Transitional Employees)

### ARTICLE 15
### GRIEVANCE-ARBITRATION PROCEDURE

### Section 1.  Definition

A grievance is defined as a dispute, difference, disagreement or complaint between the parties related to wages, hours, and conditions of employment. A grievance shall include, but is not limited to, the complaint of an employee or of the Union which involves the interpretation, application of, or compliance with the provisions of this Agreement or any local Memorandum of Understanding not in conflict with this Agreement.

### Section 2.  Grievance Procedure Steps

### Step 1:

(a) Any employee who feels aggrieved must discuss the grievance with the employee's immediate supervisor within

90

Article 15.2 (Step 1)

fourteen (14) days of the date on which the employee or the Union first learned or may reasonably have been expected to have learned of its cause. The employee, if he or she so desires, may be accompanied and represented by the employee's steward or a Union representative. The Union also may initiate a grievance at Step 1 within 14 days of the date the Union first became aware of (or reasonably should have become aware of) the facts giving rise to the grievance. In such case the participation of an individual grievant is not required. A Step I Union grievance may involve a complaint affecting more than one employee in the office. When the Union files a class action grievance, Management will designate the appropriate employer representative responsible for handling such complaint.

(b) In any such discussion the supervisor shall have authority to settle the grievance. The steward or other Union representative likewise shall have authority to settle or withdraw the grievance in whole or in part. No resolution reached as a result of such discussion shall be a precedent for any purpose.

(c) If no resolution is reached as a result of such discussion, the supervisor shall render a decision orally stating the reasons for the decision. The supervisor's decision should be stated during the discussion, if possible, but in no event shall it be given to the Union representative (or the grievant, if no Union representative was requested) later than five (5) days thereafter unless the parties agree to extend the five (5) day period. Within five (5) days after the supervisor's decision, the supervisor shall, at the request of the Union representative, initial the standard grievance form that is used at Step 2 confirming the date upon which the decision was rendered.

(d) The Union shall be entitled to appeal an adverse decision to Step 2 of the grievance procedure within ten (10) days after receipt of the supervisor's decision. Such appeal

91

LABOR RELATIONS

APR 19 2004

U.S. POSTAL SERVICE
WASHINGTON, DC 20260-0601

Wilson 5
on 10-7-05

# AMERICAN POSTAL WORKERS UNION, AFL-CIO

53 ⊕ 1984

**STEP 2 GRIEVANCE APPEAL FORM**

| 1 DISCIPLINE (NATURE OF) OR CONTRACT (ISSUE) | CRAFT | DATE | LOCAL GRIEVANCE | USPS GRIEVANCE |
|---|---|---|---|---|
| Removal | Clerk | | #C14-07-04 | |

| 2 TO USPS STEP 2 DESIGNEE (NAME & TITLE) | INSTALLATION/SEC. CEN./BMC | | PHONE |
|---|---|---|---|
| Debbie Kelley-Brown | Delaware Processing Dist. Ctr | | 323-2241 |

| 3 FROM: LOCAL UNION (NAME OF) | ADDRESS | CITY | STATE | ZIP |
|---|---|---|---|---|
| Malcolm T Smith Area Local | PO Box 311 | New Castle, | De. | 19720 |

| 4 STEP 2 AUTHORIZED UNION REP. - (NAME & TITLE) | AREA CODE PHONE (OFFICE) | AREA CODE PHONE (OTHER) |
|---|---|---|
| Courtland S. Stinson | (302) 323-0211 | (302) 322-8994 |

| 5 LOCAL UNION PRESIDENT | AREA CODE PHONE (OFFICE) | AREA CODE PHONE (OTHER) |
|---|---|---|
| Steven Collins | (302) 323-0211 | (302) 322-8994 |

## STEP 1 MEETING & DECISION    MET WITH

| 6 WHERE - WHEN | UNIT/SEC/BR/STA/OFC | DATE/TIME | USPS REP.   SUPR | GRIEVANT AND/OR STEWARD |
|---|---|---|---|---|
| | DPDC Wilm De 1850 | 4/6/04 | Joe Pascual | Collins |

| 7 STEP 1 DECISION BY (NAME & TITLE) | | | DATE & TIME | INITIALS ONLY VERIFIES INITIALING ONLY DATE OF DECISION |
|---|---|---|---|---|
| Joylyn T. Pascual | SDO | | 4/6/04  1350 | |

| 8 GRIEVANT PERSON OR UNION IMMEDIATE (ADDRESS) | | CITY | STATE | PHONE |
|---|---|---|---|---|
| Wilson, Melinda  6 | 28 Ashley Dr | New Castle, De | 19720 | 345-4854  983-3529 |

| 9 SOCIAL SEC. NO. | SERVICE SENIORITY | CRAFT | FTR - PTR - PTF | LEVEL | STEP | DUTY HRS | OFF DAYS |
|---|---|---|---|---|---|---|---|
| 2808 | 4-85 | Clerk | ☒ ☐ ☐ ☐ | 5 | 0 | 7-3 30 | SA SU M T W T F |

| 10 JOB#/PAY LOCATION (UNIT/SEC/BR/STA/OFC) | WORK LOCATION CITY AND ZIP CODE | LIFETIME SECURITY | VETERAN |
|---|---|---|---|
| 215 | Wilm, DE PDC 19850 | YES ☒ NO ☐ | YES ☐ NO ☒ |

**11** Pursuant to Article 15 of the National Agreement we hereby appeal to Step 2 the following Grievance alleging a Violation of (but not limited to) the following: NATIONAL, (Art./Sec.)

LOCAL MEMO (ART./SEC.) OTHER MANUALS, POLICIES, L/M MINUTES, ETC.

Art. 2,5,15,16,17,19,30,31    EL-921, FMLA

**12** DETAILED STATEMENT OF FACTS/CONTENTIONS OF THE GRIEVANT

Management issued the grievant a notice of removal for the charge of "improper conduct". She recieved the notice on 4/6/04. The union contents that this removal is for unjust cause, procedurally defective, untimely, punitive rather than corrective in nature, non-progressive, disparate and in direct violation of the EL-921. The grievant has a medical condition that at times she is sick and takes treatments that makes her feel better and is able to work. This removal is in violation of Art. 16.1 the principles of discipline, the grievant has not past discipline or discussions on this issue. The grievant was not given a proper day in court.

List of attached papers as identified For more info see attached

**13** CORRECTIVE ACTION REQUESTED For the Removal issued to the grievant on 4/6/04 to be rescinded and expunged from all records, grievant to be made whole with all entitlement, back pay, holiday pay, benefits and all other entitlements. Grievant to be made whole

Adam C Brile - President

EL 4-7-04
Wilson Melinda

Issue: Removal

Background: Management issued the grievant a notice of removal for the charge of "improper conduct". She recieved the notice on 4/6/04.

union contention: violation of Art. 2,5,15,16,17,19,30,31 of the EL-921, FMLA.
 The union contents that management is in violation of the above when they issue the grievant a removal for unjust cause, that is procedurally defective, untimely, punitive rather than corrective in nature, non-progressi disparate and in direct violation of the EL-921. The grievent has a medical condition that at times she is sick and takes treatment that makes her feel better and is able to work. This removal is in violation of Art. 16.1 the principles of discipline, the grievent has no past discipline or discussion on this issue. The grievent was not given a proper

CL 4-7-04
Wilson, Melinda

day in court, but turned out to be a interview.
The dates she was accused of the 3971= were
never presented to her for questioning and that
is the reason "I don't know was given". This is
in direct violation of the EL-921 and evedince
must be presented to the greivent in the day in court
  Also a removal is harsh and redinal and not
Progressive or corrective. A discussion could have
avoid this major issue.
  Also this issue of discipline started after
the greivent stopped having a affair with the
ELPR Specialist at the same plant.
  The MDO also was involved in the invertagation
of the case and also is a concurring official which
is also in direct violation of the CBA and EL-921.
There was no impartial descision made and the
greivent never stood a chance of having a fair
day in court. This discipline came from the top
to the bottom in violation of the CBA and EL-921.
  Art. 16.1 © clearly lays out the just cause
Provisions for termaintion and this case does not
make it, progression must be used.

A-0034

CL 4-7-04
Wilson Melinda.

Corrective action: For the removal issued to the
grievent on 4/6/04 to be rescinded and expunged
from all records, grievent to be made whole with
all entitlements, back pay, holiday pay, benefits
and all other entitlements

Grievent to be made whole.

## REGULAR ARBITRATION PANEL

| | |
|---|---|
| In the Matter of Arbitration ) | |
| ) | Grievant: M. Wilson |
| between ) | |
| ) | Post Office: Wilmington, DE |
| United States Postal Service ) | P&DC |
| ) | Case No: C00C-1C-D 04114132 |
| and ) | |
| ) | |
| American Postal Workers Union ) | |

Before:                                        GEORGE R. SHEA, Jr.

Appearances:
    For United States Postal Service: A. Keen
    For American Postal Workers Union: S. Collins

Place of Hearing:                              Wilmington, DE
Date of Hearing:                               October 7, 2004
Date of Post Hearing Submissions:              October 14, 2004
Date of Award:                                 November 10, 2004
Relevant Contract Provisions:                  Articles 15, 16
Contract Year:                                 2000-2003
Type of Grievance:                             Discipline (Removal)

### AWARD SUMMARY

For the reasons more fully set forth in the attached Opinion, the
Arbitrator determines that the underlying grievance in this matter
is not arbitrable by reason of the Grievant/Union's late initiation
of the grievance. The grievance, therefore, is dismissed with
prejudice. The Arbitrator further determines that the proper
disposition of the grievance does not require him to address the
Parties' contentions regarding the merits of the grievance and the
Arbitrator makes no findings, determinations or rulings regarding
the merits of those contentions.

*George R. Shea, Jr*
George R. Shea, Jr.



## OPINION

STATEMENT OF PROCEEDINGS:

The Union, in accordance with the Parties' National Agreement [Agreement], appealed the above captioned matter to arbitration. The undersigned was designated as the Arbitrator to hear and decide the matter. The Arbitrator held a hearing on and at the previously captioned date and location. The Parties' representatives appeared and the Arbitrator provided them with a full and fair opportunity to be heard, to present evidence and argument, and to examine and cross examine witnesses.

The Service requested that the question of the arbitrability of the underlying grievance be separated from the merits of the grievance. The Union did not object to this request.[1]  The Parties requested the Arbitrator hear the entire matter but address the issue of arbitrability first and only address the merits of the grievance, if he found the matter arbitrable.

The Service called C. Van Istendal and L. Drummer as its witnesses. The Union called M.G. Wilson [Grievant] as its witnesses.

ISSUE:

The Parties agreed to the following statement of the issue before the Arbitrator:

> **Is the underlying grievance not arbitrable by reason of its' date of filing? If the grievance is arbitrable, did the Service have just cause to issue M. Wilson [Grievant], the Notice of Removal dated March 24, 2004 [Notice/ Removal/ Notice of Removal]? If not, what shall be the appropriate remedy?**

---

[1] Collins, H4C-4B-C 4753, (1987)

C00C-1C-D 04114132                          2

OPINION

STATEMENT OF PROCEEDINGS:

The Union, in accordance with the Parties' National Agreement [Agreement], appealed the above captioned matter to arbitration. The undersigned was designated as the Arbitrator to hear and decide the matter. The Arbitrator held a hearing on and at the previously captioned date and location. The Parties' representatives appeared and the Arbitrator provided them with a full and fair opportunity to be heard, to present evidence and argument, and to examine and cross examine witnesses.

The Service requested that the question of the arbitrability of the underlying grievance be separated from the merits of the grievance. The Union did not object to this request.[1]   The Parties requested the Arbitrator hear the entire matter but address the issue of arbitrability first and only address the merits of the grievance, if he found the matter arbitrable.

The Service called C. Van Istendal and L. Drummer as its witnesses. The Union called M.G. Wilson [Grievant] as its witnesses.

ISSUE:

The Parties agreed to the following statement of the issue before the Arbitrator:

> Is the underlying grievance not arbitrable by reason of its' date of filing? If the grievance is arbitrable, did the Service have just cause to issue M. Wilson [Grievant], the Notice of Removal dated March 24, 2004 [Notice/ Removal/ Notice of Removal]? If not, what shall be the appropriate remedy?

---

[1] Collins, H4C-4B-C 4753, (1987)

C00C-1C-D 04114132                2

**FACTS:**

The events regarding this matter were described in the testimony of the Parties' witnesses and in the documentary evidence offered by the Parties. Based upon his review of that evidence, including his personal observation of the witnesses during their testimony, the Arbitrator determines that the preponderance of that evidence supports the following findings of fact.

1.  M.G. Wilson [Grievant], at times relevant to this matter, was a postal employee assigned to a Clerk position on Tour 2 at the Wilmington, DE P&DC [Facility]. At the time of the Hearing, the Grievant had been employed by the Service for approximately 19 years. During her postal employment, she served the Union as a Shop Steward and in that capacity had represented other employees at pre-discipline interviews prior to March 10, 2004.

    At all times relevant to this matter, the Grievant's official residential address was the one used by the Service when notifying her of the Notice of Removal. Prior to the events at issue in the instant grievance, the Grievant had received mail, including certified mail, at this address.

    The Grievant suffers from asthma, a condition which made her eligible for Family Medical Leave and provided her with protection for related absences.

    On or about October 20, 2003, the Grievant commenced part-time employment at Boscov's, a department store located near the Facility. The work hours of this part-time employment were outside her postal work hours.

2.  March 10, 2004: L. Drummer [Disciplining Supervisor] held a pre-discipline Interview or Day in Court procedure regarding the anticipated Removal of the Grievant from her postal employment. The interview was attended by C. Van Istendal [Concurring Official]. The Grievant was represented by Pat McLaughlin, a Union representative. Subsequent to the pre-

discipline interview, the Grievant was relieved of her postal identification badge and escorted from the Facility.

3. March 13, 2004: The Disciplining Supervisor responded to an inquiry from the Grievant and indicated that her decision to Remove the Grievant from her postal employment was based upon the Disciplining Supervisor's personal investigation of the charged incidents.

4. March 24, 2004: The Service, in the person of L. Drummer [Disciplining Supervisor] with the concurrence of C. Van Istendal, issued the Grievant a Notice of Removal dated March 24, 2004 [Notice / Removal]. The first paragraph of the Notice of Removal stated that it would be effective 30 days from the Grievant's receipt of the Notice. On the same day, the Service sent the Notice of Removal by regular First Class and Certified Mail to the Grievant's residential address. The Service requested proof of delivery of the First Class mailing.

5. March 30, 2004: The Letter Carrier assigned to the postal delivery route servicing the Grievant's residence, notified the Service's Labor Relations Department that he delivered the First Class mail to the Grievant's resident address and simultaneously left notice of attempted delivery of the Certified Mailing on this date. (Sr-#1, 2)

6. April 1, 2004: The Service's Equal Employmnet Opportunity [EEO] Office sent the Grievant an "Information for Pre-Complaint Counseling" form. The Information Request was the result of the Grievant's contact with the EEO Office on March 31, 2004.

7. April 6, 2004: The Grievant, who testified that she had not been at her residential address between March 26, 2004 and April 6, 2004 for personal reasons, signed for the Certified Mail piece containing the Notice of Removal. She further

testified that this was the first notification she received of the Notice of Removal and that she immediately contacted the Union and provided the Union with a written statement regarding the charges upon which the Removal was based.

8. April 10, 2004: The Grievant responded to the EEO Office's Information request on this date and indicated that she had been removed from her postal employment on March 31, 2004 and had filed a grievance contesting the Removal on April 6, 2006. (Sr-#3)

9. April 16, 2004: The Union initiated the underlying grievance challenging the contractual appropriateness of the Notice of Removal at a Step One meeting on this date. The Service denied the grievance on its merits.

10. April 19, 2004: On an undated Step 2 Appeal form, the Union appealed the underlying grievance contesting the contractual appropriateness of the Notice of Removal to Step 2 of the grievance procedure. The Form was stamped as received by the Service's Labor Relations Department on April 19, 2004.

11. April 23, 2004: A Step 2 meeting regarding the grievance took place between the Service, in the person of A. Keen, and the Union, in the person of C. Stinson.

12. April 27, 2004: The Service, in the person of Keen, notified the Union, in the person of Stinson, that the grievance was denied. The Service asserted that the grounds of the denial was the untimeliness of the grievance. The Service also denied the grievance on its merits.

13. May 4, 2004: The Union appealed the Service's denial of the grievance to Step 3 and to arbitration.

C00C-1C-D 04114132                    5

POSITIONS OF THE PARTIES:

United States Postal Service [Service]

Procedural Arbitrability:

The Service maintained that the instant matter is not arbitrable by reason of the Grievant/Union's failure to file the grievance within the fourteen day time limit established by Section 15.2, Step One of the Agreement's grievance procedure. The Service asserted that it perfected this challenge to the grievance's arbitrability in its Step 2 denial of the grievance, as required by Section 15.4.B of the Agreement.[2] The Service further asserted that the Grievant/Union had waived the grievance pursuant to the provisions of Section 15.4.B of the Agreement. Finally, the Service asserted that the Arbitrator, by operation of Section 15.5.A.6 of the Agreement, cannot alter or amend the provisions of Section 15.2 or 15.4 of the Agreement and must find the grievance not arbitrable.

Substantive Merits of the Grievance:

The Service maintained that it had just cause to issue the Grievant the contested Notice of Removal; in that, the Removal (a) was issued subsequent to the Service's investigation of the charge, including a proper pre-discipline interview of the Grievant, (b) was based upon a proven charge of the Grievant's Improper Conduct by reason of her mis-use of sick leave (c) was consistent with the proven charge and the Grievant's employment record and (d) was issued in accordance with procedures sanctioned or required by the Agreement and the Just Cause Standard.

Based upon these factual assertions and contractual contentions, the Service requested the Arbitrator deny the grievance.

_____

[2] Aaron, H8T-5C-C 12360, (1982)

C00C-1C-D 04114132                    6

<u>American Postal Workers Union, AFL-CIO</u> [Union]

**Procedural Arbitrability:**

The Union maintained that the grievance was arbitrable. The Union maintained that the Service had the burden of establishing the basis of its claim that the grievance was not arbitrable and has failed to meet that burden. Affirmatively, the Union maintained that the grievance, which was filed on April 16, 2004, was initiated timely. Specifically, the Union argued that the tolling of the time period for initiating the grievance commenced on April 6, 2004, the date on which the Grievant reasonably could have been expected to learn of the Service's issuance of the contested Removal. The Union requested the Arbitrator find the grievance arbitrable.

**Substantive Merits of the Grievance:**

The Union maintained that the Service did not have just cause to issue the contested Removal to the Grievant; in that, the Removal (a) was excessive, therefore, not corrective in nature, (b) was untimely, therefore, procedurally defective, (c) was issued without a proper pre-discipline investigation, therefore, procedurally defective and arbitrary in nature and (d) was issued without a proper pre-discipline interview of the Grievant and without a proper concurrence by a higher authority, therefore, failed to comply with procedures mandated by the Agreement.

Based upon these factual assertions and contractual contentions, the Union requested the Arbitrator sustain the grievance and award the Grievant reinstatement to her postal employment and full restitution of all wages and benefits lost by her as a result of the contested Removal.

C00C-1C-D 04114132                    7

**DISCUSSION:**

Section 15.2. Step 1 (a) of the Agreement, in parts relevant to this matter, provides the following:

> "Any employee who feels aggrieved must discuss the grievance with the employee's immediate supervisor within fourteen (14) days of the date on which the employee or the Union first learned or may reasonably have been expected to have learned of its cause."

Section 15.4.B of the Agreement, in parts relevant to this matter, provides the following:

> "The failure of the employee or the Union in Step 1 or the Union thereafter to meet the prescribed time limits of the Steps of this procedure, including arbitration, shall be considered a waiver of the grievance. However, if the Employer fails to raise the issue of timeliness at Step 2 or at the step at which the employee or Union failed to meet the prescribed time limits, whichever is later, such objection to the processing of the grievance is waived."

The Service, as the party relying on the non-arbitrability claim based upon the untimeliness of the grievance's initiation, must bear the burden of establishing the contractual and factual basis of that claim. If the Service establishes its prima facie case on this issue, the burden of proof and persuasion shifts to the Union to rebut the Service's prima facie evidence or to establish circumstances which would excuse or justify the late filing of a grievance.

The Service maintained that the provisions of Article 15 of the Agreement [Article 15] mandate that a grievance be filed within fourteen days of the Grievant's or the Union's first knowledge of the incident grieved, in the instant matter the Service's Removal of the Grievant from her postal employment. The Service argued that this requirement was absolute and no exceptions could be made to the mandate without altering the Agreement. The Arbitrator cannot agree.

C00C-1C-D 04114132                    8

There is arbitral discussion, even in the cases cited to the Arbitrator by the Service, which imply that, if the Grievant was physically, psychologically or emotionally incapable of understanding the significance of a Notice of Removal or was prevented from receiving or reacting to a Notice of Removal, the tolling of the time limits of Section 15.2 would not commence until the impediments to the Grievant's action were removed.

The Arbitrator determines that the evidence in this matter establishes that the Service mailed the Notice of Removal to the Grievant's residential address of record. This mailing was accomplished by First Class and Certified Mail.

Such a proper mailing of the First Class mail piece creates a rebuttable presumption that the item mailed was delivered and received by the addressee.[3] This presumption may be rebutted by evidence establishing that the sender used an incorrect address when mailing the item or that the mailed piece was returned to the sender. The evidentiary record of this matter contains no such evidence.

Conversely, the documentary evidence established that the First Class mailing was delivered to the Grievant's resident address of record on March 30, 2004. The Arbitrator further determines that the preponderance of documentary evidence and credible testimony establish that the Grievant actually received the Notice of Removal contained in the First Class mailing on or before March 31, 2004.

Based upon these findings, the Arbitrator determines that the tolling of the fourteen day period during which the Grievant or the Union had to initiate a grievance challenging the contractual appropriateness of the Notice of Removal commenced on March 31,

---

[3] See Liacos, Paul J. Handbook of Massachusetts Evidence, 5th ed Little Brown and Company, Boston, MA (1981) at page 52 for discussion and cited cases.

C00C-1C-D 04114132                    9

2004 and ended no later than April 14, 2004. The underlying grievance in this matter was initiated on April 16, 2004.

The Arbitrator determines that the evidentiary record does not contain sufficient evidence to warrant a finding that the Grievant was physically, mentally or emotionally incapacitated or impaired to the extent that she could not understand the significance of the Notice of Removal or could not initiate a grievance challenging its contractual appropriateness during the period between March 31, 2004 and April 14, 2004. The Arbitrator further determines that there is no evidence that the Parties agreed to extend the time for filing of the underlying grievance; conversely, the evidence supports the finding that the Service properly raised the question of the timeliness of the grievance and perfected this objection to the grievance as required by Section 15.4.B of the Agreement.

The Arbitrator recognizes the premise that a grievance must be presumed arbitrable and he is reluctant to dismiss a grievance on technical grounds, as contrasted with addressing the Parties' substantive contentions regarding the dispute. The Arbitrator, however, also recognizes his obligation to apply the Agreement in accordance with the Parties' intent as expressed by the unambiguous language used by them to express their accord on this issue.

In consideration of these findings regarding the non-arbitrablitly of the underlying grievance, the Arbitrator determines that the proper disposition of this grievance does not require him to address the substantive contentions regarding the question of whether or not the Service had just cause to issue the Grievant the contested Notice of Removal. The Arbitrator, consequently, makes no finding, determination or ruling regarding the validity of the Parties' contention on this issue.

Based upon the findings and reasoning set forth in this Opinion, the Arbitrator makes the attached Award.

C00C-1C-D 04114132                          10

# CERTIFICATION BY EMPLOYEE'S HEALTH CARE
# PROVIDER FOR EMPLOYEE'S SERIOUS ILLNESS—FMLA

*This form is to be completed by employee's Health Care Provider when employee is requesting FMLA and medical documentation is required pursuant to 512.41, 513.36 and 515.5 of the ELM. Form PS 3971 must be completed by employee.*

**Employee's name**  Melinda G. Wilson

Description of serious health condition *(On the back of this form is the description of a "serious health condition" under FMLA. Does the patient's condition qualify under any of the categories described? If so, please check the applicable category.)*

(1) _____ (2) _____ (3) _____ (4) ✓ (5) _____ (6) _____ None of the above _____

Without giving a specific diagnosis or prognosis, briefly note how the medical facts meet the criteria of the category checked above.

Date condition commenced: 12/95 and 12/97
Probable duration of condition: Lifetime
Probable duration of the present incapacity (if different): _____

Will the employee be required to be off from work intermittently or work on a reduced schedule as a result of this condition and /or treatments? Yes _____ Note the probable time and duration. depends on asthmatic conditions + Back or Neck Pain

If the condition is chronic (#4) or pregnancy (#3), note if the employee is presently incapacitated and the likely duration and frequency of episodes of incapacity.

If additional or continuing treatments are required for the condition, provide the nature and regimen of the treatments, an estimate of the probable number of treatments, the length of absence required by the treatments, and the actual or estimated dates of the treatments, if known. may require intravenous asthma treatments anytime a severe attack occurs

Is the employee able to perform the functions of employee's position? No if no, describe the physical restrictions placed on the employee, including the duration of such restrictions. Sit down position with chair w/arm rests.

**Health Care Provider's Signature**  _____  **Date** 2/12/99

**Address**  Omega Prof Ctr. B-89 Newark DE 19713

6/26/95                                        APWU FORM 2

RECEIVED
FEB 16 1999



DEPOSITION
EXHIBIT
Wilson 19
10-7-05

A-0047

Duty Status Report

U.S. Department of Labor
Employment Standards Administration
Office of Workers' Compensation Programs

This form is provided for the purpose of obtaining a duty status report for the employee named below. This request does not constitute authorization for payment of medical expense by the Department of Labor, nor does it invalidate any previous authorization issued in this case. This request for information is authorized by law (5 USC 8101 et seq.). Information collected will be handled and stored in compliance with the Freedom of Information Act, the Privacy Act of 1974 and the OMB Cir. A-108.

OMB No. 1215-0103
Expires: 10-31-94
OWCP File Number
(if known)

**SIDE A - Supervisor: Complete this side and refer to physician**

1. Employee's Name (Last, first, middle)
   Wilson, Melinda C

2. Date of Injury (Month, day, yr.)  21/98

3. Social Security No.  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

4. Occupation  Clerk

5. Describe How the Injury Occurred and State Parts of the Body Affected

6. The Employee Works
   Hours Per Day  8 2       Days Per Week

7. Specify the Usual Work Requirements of the Employee. Check Whether Employee Performs These Tasks or is Exposed Continuously or Intermittently, and Give Number of Hours.

**SIDE B - Physician: Complete this side**

8. Does the History of Injury Given to You by the Employee Correspond to that Shown in Item 5? ☒ Yes ☐ No (If not, describe)
   Yes

9. Description of Clinical Findings  Serotonin cysts / severe depression... treatment

10. Diagnosis Due to Injury  endometriosis

11. Other Disabling Conditions  severe depression

12. Employee Advised to Resume Work?
    ☐ Yes, Date Advised  /  /       ☐ No

13. Employee Able to Perform Regular Work Described on Side A?
    ☐ Yes, If so  ☐ Full-Time  or ☐ Part-Time _____ Hrs Per Day
    ☐ No, If not, complete below:

| Activity | Continuous | Intermittent | | Continuous | Intermittent | |
|---|---|---|---|---|---|---|
| a. Lifting/Carrying: State Max Wt. | #lbs. | #lbs. | Hrs Per Day | #lbs. | #lbs. 10 LST | 2 Hrs Per Day |
| b. Sitting | | | Hrs Per Day | ✓ | | 6 Hrs Per Day |
| c. Standing | | | Hrs Per Day | ✓ | | Hrs Per Day |
| d. Walking | | | Hrs Per Day | | | 1 Hrs Per Day |
| e. Climbing | | | Hrs Per Day | N/A | N/A | 0 Hrs Per Day |
| f. Kneeling | | | Hrs Per Day | N/A | N/A | 0 Hrs Per Day |
| g. Bending/Stooping | | | Hrs Per Day | | | 1 Hrs Per Day |
| h. Twisting | | | Hrs Per Day | | | 1 Hrs Per Day |
| i. Pulling/Pushing | | | Hrs Per Day | | | 1 Hrs Per Day |
| j. Simple Grasping | | | Hrs Per Day | | | 2 Hrs Per Day |
| k. Fine Manipulation (includes keyboarding) | | | Hrs Per Day | | | 2 Hrs Per Day |
| l. Reaching above Shoulder | | | Hrs Per Day | | | 2 Hrs Per Day |
| m. Driving a Vehicle (Specify) | | | Hrs Per Day | N/A | N/A | Hrs Per Day |
| n. Operating Machinery (Specify) | | | Hrs Per Day | | | 2 Hrs Per Day |
| o. Temp. Extremes | | | range in degrees F | N/A | N/A | range in degrees F |
| p. High Humidity | | | Hrs Per Day | | | Hrs Per Day |
| q. Chemicals, Solvents, etc. (Identify) | | | Hrs Per Day | | | Hrs Per Day |
| r. Fumes/Dust (Identify) | | | Hrs Per Day | | | Hrs Per Day |
| s. Noise (Give dBA) | | | dBA Hrs Per Day | | | dBA Hrs Per Day |

t. Other (Describe)
need have needed I case and hour with appointments due to work injury 2/2/98. Must miss work to 4:00 pm due to severe endometriosis and pelvic disorder along with meds.

OWCP case #030257944

14. Are Interpersonal Relations Affected Because of a Neuropsychiatric Condition? (e.g. Ability to Give or Take Supervision, Meet Deadlines, etc.) ☒ Yes ☐ No (Describe)
    severe depression + medication

15. Date of Examination  06/16/00

16. Date of Next Appointment  09/15/00

17. Specialty  M

18. Tax Identification Number

19. Physician's Signature

20. Date  06/16/00

~~Out~~
CL 4-07 -04

LIGHT DUTY

MEDICAL STATEMENT OF PHYSICAL CONDITION

0-30 DAYS

31-60 DAYS

 **UNITED STATES POSTAL SERVICE**

Employees returning to work after illness or injury must provide medical evidence to support his/her absence, based on the local leave regulations. Without the required medical documentation, employee may not be permitted to return to work.

_Melinda  Wilso_ _____ _FSM Clerk_ _____
Employee (Patient)                                   Job Title

_6/98_ ~~████████████████████████████~~
Date of Initial Treatment

_Although she is stable with regards to depression & sleep_
Complete Prognosis for full recovery

_disorder she requires continued Medication and day shift hrs-_

_____ (Good)         _____ (Fair)         __✓__ (Poor)

Totally incapacitated from work from  _____ through  _____
                                       Date           Date

Partially incapacitated from work from  _____ through  _____
                                        Date           Date

PHYSICIAN· PLEASE COMPLETE RESTRICTIONS ON ATTACHED PAGE

_M_____  _10/17/00_     _B-89 Omega Dr._
DOCTOR SIGNATURE       Date      Address

_(302) 738-5580_               _Newark DE 19713_
Phone No.

_____               _____
Fax No.

**TOTAL CARE PHYSICIANS**
**OMEGA PROFESSIONAL CENTER**
**BUILDING B, SUITE 89**
**OMEGA DRIVE**
**NEWARK, DE 19713**

1109

A-0049

CL 4-07-04

## TOTAL CARE PHYSICIANS  FAMILY PRACTICE

D Professional Bldg. - Suite 101, 1320 Philadelphia Pike, Wilmington, DE 19809          302-798-0666
D Omega Professional Center - Building 1b, Suite 89, Omega Drive, Newark, DE 19713          302-738-5500
D Glasgow Professional Center - Suite 124, 2600 Glasgow Avenue, Newark, DE 19702          302-836-4200

NAME  M. Wilson

ADDRESS _____ DATE 3/12/04

℞ Ms. Wilson has been treated
for major depression, which
began, following her ① wrist
injury. Her chronic disability is
a significant factor in her depression.

☐ Label                              _____ M.D., D.O.
                                      Dispense as Written

Refill _____ times  PRN   NR

DEA NO. _____            _____ M.D., D.O.
                                      Substitution Permitted

1110

A-0050

*Complete + Approved*

Certification of Health Care Provider
'Family and Medical Leave Act of 1993)

**U.S. Department of Labor**
Employment Standards Administration
Wage and Hour Division

*RMD Input 5-14-02*
*Pub-71 sent via mail 5-14-02 /RMS*

(When completed, this form goes to the employee, *not to the Department of Labor.*)

OMB No.: 1215-0181
Expires:    06/30/02

| 1. Employee's Name | 2. Patient's Name *(if different from employee)* |
|---|---|
| Melinda G. Wilson | |

3. Page 4 describes what is meant by a "serious health condition" under the Family and Medical Leave Act. Does the patient's condition qualify under any of the categories described? If so, please check the applicable category.

(1) _____ (2) _____ (3) _____ (4) __X__ (5) _____ (6) _____ , or None of the above _____

4. Describe the medical facts which support your certification, including a brief statement as to how the medical facts meet the criteria of one of these categories: *Chronic Asthma + Sleep disorder + Back and Neck Pain*

5. a. State the approximate date the condition commenced, and the probable duration of the condition (and also the probable duration of the patient's present incapacity[2] if different):

*Asthma since birth.*
*Back + Neck Injurys since 12/95*
*Sleep disorder since Jun '98.*

b. Will it be necessary for the employee to take work only intermittently or to work on a less than full schedule as a result of the condition (including for treatment described in Item 6 below)?

*Yes intermittently. Depends on asthmatic condition. Back + Neck Pain also from car accident of 12/30/95. Also sleep disorder of 6/98.*

If yes, give the probable duration:

*Lifetime*

c. If the condition is a chronic condition (condition #4) or pregnancy, state whether the patient is presently incapacitated[2] and the likely duration and frequency of episodes of incapacity[2]:

*She is not presently incapacitated but may require treatments at anytime there is a severe attack. The episodes of incapacity may be from 1-3 days or more depending on severity per month*
*6-7-01*

[1] Here and elsewhere on this form, the information sought relates only to the condition for which the employee is taking FMLA leave.

[2] "Incapacity," for purposes of FMLA, is defined to mean inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom.

Page 1 of 4

Form WH-380
Revised December 1993

A-0051

ll tre...ments will be required for the condition  provide an estimate of the probabl...

treatments may vary as well as the number...

e patient will be absent from work or other daily activities because of treatment on an intermittent or ☞art-time
als. also provide an estimate of the probable number of and interval between such treatments. actual or ☞stimated
tes of treatment if known, and period required for recovery if any:

These treatments may vary and the dates are unknown
as well as recovery time.

b. If any of these treatments will be provided by another provider of health services (e.g., physical the☞rapist), please
state the nature of the treatments:

N/A

c. If a regimen of continuing treatment by the patient is r...ed under your supervision, provide☞ a general description of
such regimen (e.g., prescription drugs, physical therapy ...ring special equipment):

Prescription drugs
Inhalers.

a. If medical leave is required for the employee's abs...from work because of the employee's own condition
including absences due to pregnancy or a chron...tion), is the employee unable to perform work of any kind?

Yes, at the time of flacks she may require
treatments or bedrest. also.
She may require light-dutywork also.

b. If able to perform some work. is the employ... le to perform any one or more of the essential functions of the
employee's job (the employee or the emp...uld supply you with information about the essential job functions)?
If yes, please list the essential functions th...ee is unable to perform: Unable to stand constantly
or above shoulder lift, chair with arm rests and
She can have a sit down pos... modified case to mail.

c. If neither a nor b. applies. is it neces...    employee to be absent from work for treatment?

ŏ. a.  If leave is required to care for a family member of the employee with a serious health condition, does the patient require assistance for basic medical or personal needs or safety, or for transportation?

N/A

b.  If no, would the employee's presence to provide psychological comfort be beneficial to the patient or assist in the patient's recovery?

S/A

c.  If the patient will need care only intermittently or on a part-time basis, please indicate the probable duration of this need:

N/A

Signature of Health Care Provider  (SETH IVINS)          Type of Practice  IM

Address  R-89 Omega Dr.          Telephone Number  (302) 738-5700

Newark DE 19713          Date  6/5(0)01

To be completed by the employee needing family leave to care for a family member:

State the care you will provide and an estimate of the period during which care will be provided, including a schedule if leave is to be taken intermittently or if it will be necessary for you to work less than a full schedule:

**TOTAL CARE PHYSICIANS
OMEGA PROFESSIONAL CENTER
BUILDING B, SUITE 89
OMEGA DRIVE
NEWARK, DE 19713**

Employee Signature          Date  6/5/01

A-0053

**TOTAL CARE PHYSICIANS** FAMILY PRACTICE

❑ Professional Bldg. - Suite 101, 1320 Philadelphia Pike, Wilmington, DE 19809    302-798-0666
❑ Omega Professional Center - Building B, Suite 89, Omega Drive, Newark, DE 19713    302-738-8600
❑ Glasgow Professional Center - Suite 124, 2600 Glasgow Avenue, Newark, DE 19702    302-836-4200

NAME _Melinda Wilson_

ADDRESS _____ DATE 4/30/02

℞ Ms. Wilson's major depressive disorder remains stable on her medication and stable work hrs. She requires permanent day shift schedule, as was agreed upon when speaking with your medical director.

❑ Label

Dispense as Written _____ M.D., D.O.

Refill _____ times    PRN    NR

DEA NO. _____

Substitution Permitted _____ M.D., D.O.

CL-4-07-04

llll

Certification of Health Care Provider
(Family and Medical Leave Act of 1993)

—RMD input 5-30-02 / BMB

U.S. Department of Labor
Employment Standards Administration
Wage and Hour Division

*(When completed, this form goes to the employee, not to the Department of Labor.)*

OMB No.: 1215-0181
Expires:   06/30/02

1. Employee's Name

    Melinda G. Wilson

2. Patient's Name *(If different from employee)*

3. Page 4 describes what is meant by a "serious health condition" under the Family and Medical Leave Act. Does the patient's condition qualify under any of the categories described? If so, please check the applicable category.

    (1) _____  (2) _____  (3) _____  (4) ✓  (5) _____  (6) _____ , or None of the above _____

4. Describe the medical facts which support your certification, including a brief statement as to how the medical facts meet the criteria of one of these categories:  Patient has chronic Asthma, Chronic hand + wrist injuries and neck + back pain

RECEIVED
Complete + Approved
MAY 30 2002
FMLA COORDINATOR
SOUTH ____TER

5. a.  State the approximate date the condition commenced, and the probable duration of the condition (and also the probable duration of the patient's present incapacity[2] if different):
    Asthma - Lifetime
    hand + wrist - 1992
    neck + back - car accident 1995

    Will it be necessary for the employee to take work only **intermittently** or to work on a **less than full schedule** as a result of the condition (including for treatment described in Item 6 below)?
    Yes, Employee may be off work from 1 — 3 days per week for either condition depending on flareups.

    If yes, give the probable duration:  Lifetime
    1 — 3 days per week

    c.  If the condition is a chronic condition (condition #4) or pregnancy, state whether the patient is presently incapacitated[2] and the likely duration and frequency of episodes of incapacity[2]:
    Patient has been incapacitated from 5/1 — 5/28.
    Patients episodes depend on flareups and may occur at any time or frequency.

Here and elsewhere on this form, the information sought relates only to the condition for which the employee is taking FMLA leave.

"Incapacity," for purposes of FMLA, is defined to mean inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom.

A-0055

a. If leave is required to care for a family member of the employee with a serious health condition, does the patient require assistance for basic medical or personal needs or safety, or for transportation?

b. If no, would the employee's presence to provide psychological comfort be beneficial to the patient or assist in the patient's recovery?

c. If the patient will need care only intermittently or on a part-time basis, please indicate the probable duration of this need:

Pls- print Dr's name ~ Seth Ivins, MD

_____
Signature of Health Care Provider

Type of Practice   family practice

**TOTAL CARE PHYSICIANS**
**OMEGA PROFESSIONAL CENTER**
**BUILDING B, SUITE 89**
**OMEGA DRIVE**
**NEWARK, DE 19713**

Address

302-738-5500
Telephone Number

5|24|02
Date

To be completed by the employee needing family leave to care for a family member:

State the care you will provide and an estimate of the period during which care will be provided, including a schedule if leave is to be taken intermittently or if it will be necessary for you to work less than a full schedule:

_____
Employee Signature

5/24 02
Date

A-0056

uty Status Report *Malinda's copy*  

# U.S. Department of Labor
Employment Standards Administration
Office of Workers' Compensation Programs

*Wrong File*

is fo... is provided for the purpose of obtaining a duty status report for the employee named below. This request does t constitute authorization for payment of medical expense by the Department of Labor, nor does it invalidate any evious authorization issued in this case. This request for information is authorized by law (5 USC 8101 et seq.). ormation collected will be handled and stored in compliance with the Freedom of Information Act, the Privacy Act of 1974 d the OMB Cir. A-108.

OMB No. 1215-0103
Expires: 10-31-94

OWCP File Number (If known)
032011732
030205375

| SIDE A - Supervisor: Complete this side and refer to physician | SIDE B - Physician: Complete this side |
|---|---|
| Employee's Name (Last, first, middle) *ilson Melinda* | 8. Does the History of Injury Given to You by the Employee Correspond to that Shown in Item 5? ☑ Yes ☐ No (If not, describe) |
| 2. Date of Injury (Month, day, yr.) *01/4/02*  3. Social Security No. *221 52 2809* | *CL 4-07-04* |
| Occupation *FSM CLERK (USPS)* | 9. Description of Clinical Findings *Recurrent ganglion cysts, both wrists* |
| Describe How the Injury Occurred and State Parts of the Body Affected *Rt wrist: repetitive motion - pushing heavy equip* | 10. Diagnosis Due to Injury? , 11. Other Disabling Conditions *Tendinitis / ganglion cyst bilat wrists* |
| The Employee Works | 12. Employee Advised to Resume Work? ☑ Yes, Date Advised *12/3/02*  ☐ No |

13. Employee Able to Perform Regular Work Described on Side A?
☐ Yes, if so ☐ Full-Time or ☐ Part-Time _____ Hrs Per Day
☑ No, if not, complete below:

| Activity | Continuous | Intermittent | | Continuous | Intermittent | |
|---|---|---|---|---|---|---|
| Lifting/Carrying: State Max Wt. | #lbs. 15 | #lbs. 25 | 7 Hrs Per Day | #lbs. 5 | #lbs. 10 | 7 Hrs Per Day |
| Sitting | | X | 8 Hrs Per Day | | | Hrs Per Day |
| Standing | | X | 8 Hrs Per Day | | | 8 Hrs Per Day |
| W ? | | X | 8 Hrs Per Day | | | 8 Hrs Per Day |
| Climbing | | N/A | 0 Hrs Per Day | *Rec'd 12/4/02* | | 0 Hrs Per Day |
| Kneeling | | N/A | 0 Hrs Per Day | | | 0 Hrs Per Day |
| Bending/Stooping | | X | 3 Hrs Per Day | | | 3 Hrs Per Day |
| Twisting | | X | 3 Hrs Per Day | | | 3 Hrs Per Day |
| Pulling/Pushing | | X | 3 Hrs Per Day | | | 0 Hrs Per Day |
| Simple Grasping | | X | 7 Hrs Per Day | *Sorting Letters* | | 3 Hrs Per Day |
| Fine Manipulation (includes keyboarding) | | X | 6 Hrs Per Day | | | 0 Hrs Per Day |
| Reaching above Shoulder | | X | 4 Hrs Per Day | | | 0 Hrs Per Day |
| Driving a Vehicle (Specify) | | N/A | 0 Hrs Per Day | | | 0 Hrs Per Day |
| Operating Machinery (Specify) | | N/A | 0 Hrs Per Day | | | 0 Hrs Per Day |
| Temp. Extremes | | N/A | 0 range in degrees F | | | 0 range in degrees F |
| High Humidity | | N/A | 0 Hrs Per Day | | | 0 Hrs Per Day |
| Chemicals, Solvents, etc. (Identify) | | N/A | 0 Hrs Per Day | | | 0 Hrs Per Day |
| Fumes/Dust (Identify) | | N/A | 0 Hrs Per Day | | | 0 Hrs Per Day |
| Noise (Give dBA) | | N/A | 0 dBA Hrs Per Day | | | 0 dBA Hrs Per Day |

Other (Describe) *Sit like, Modified case. Chair w/ armrests / Apply Heat 15 min /hr as needed. Splint*

**THE POSTAL SERVICE WILL ACCOMMODATE ANY/ALL RESTRICTIONS SHORT OF BED REST**

*Start time no later than 930 AM due to meds.*

ANY QUESTIONS, PLEASE CALL 111?

14. Are Interpersonal Relations Affected Because of a Neuropsychiatric Condition? (e.g. Ability to Give or Take Supervision, Meet Deadlines, etc.) ☑ Yes ☐ No (Describe) *Severe depression - medication*

| 15. Date of Examination *12/3/02* | 16. Date of Next Appointment *3/3/03* |
|---|---|
| 17. Specialty *FM* | 18. Tax Identification Number |

*crued 12/18/03*

**DUTY STATUS REPORT**

**UNITED STATES**
**POSTAL SERVICE**

Employee's Name: _Melinda G Wilson_

### In an 8-hour Work Day, the Employee is able to:

| Activity | Hours at one time | Total Hours per day |
|---|---|---|
| Lift/Carry:  Less than 5 lbs. | intermittently | 5 |
| Lift/Carry:  5 - 10 lbs. | 1 | 5 |
| Lift/Carry:  11 - 20 lbs. | 1 | 1 |
| Lift/Carry:  21 – 50 lbs. | 0 | 0 |
| Lift/Carry:  51 – 70 lbs. | 0 | 0 |
| Lift/Carry:  Over 70 lbs. | 0 | 0 |
| Push/Pull (up to ___ lbs.) | 0 | 0 |
| Sit | 1 – 2 | 8 |
| Stand | 0 | 0 |
| Walk | 1 | 1 |
| Climb Stairs | 0 | 0 |
| Climb Ladders | 0 | 0 |
| Kneel | 0 | 0 |
| Bend | 1 | 1 |
| Stoop | 1 | 1 |
| Twist | 1 | 1 |
| Perform simple grasping (e.g. sort letters by hand) | 1 & 2  Sorting/able lls | 8 |
| Key on 10-key pad @ 3 keystrokes per mail piece | 0 | 0 |
| Reach above shoulder | 0 | 0 |
| Work outdoors | 0 | 0 |
| Perform driving duties:  Passenger car | 0 | 0 |
| Small truck (e. g., step van) | 0 | 0 |
| 5 – 7 Ton truck | 0 | 0 |
| Fork Lift Power On | 0 | 0 |
| Tractor trailer | 0 | 0 |
| Fine Manipulation | 0 | 0 |
| Other restrictions (explain*): | | |

Sort letters in modified case, chair w/ armrests
OK left splint, Apply heat or ice every hour
for 15 minutes as needed for pain.

*Unusual restrictions may be questioned via phone call from USPS medical professional.

_____
Physician's Signature

**Seth Ivins**
Physician's PRINTED Name

12/12/03
Date

738-5500
Telephone No.

MW/0377

Affidavit ___C___
Page _9_ of _29_

A-0058

# Boscov's

## APPLICATION FOR EMPLOYMENT

**OUR EMPLOYMENT POLICY:** Equal opportunity for all applicants because of Race, Color, Religion, Sex, Age, National Origin, or Disability.

**OUR APPLICATION POLICY:** Application for employment shall be considered active for a period of time not to exceed 60 days. Any applicant wishing to be considered for employment beyond this period should inquire as to whether or not applications are being accepted at that time.

| Last Name | First Name | Middle Name | Social Security No. | Date of Application |
|---|---|---|---|---|
| Wilson , | Melinda | Gatson | 221 52 2808 | 9-1-03 |

| Present Address: | Number | Street | City | State | Zip | Township or Borough | Telephone No. |
|---|---|---|---|---|---|---|---|
| | 28 Ashley | Dr. | New Castle, | DE | 19720. | NewCastle | Area Code 302 |

cell (301) 283-8379
302 395-4854

ARE YOU LEGALLY ELIGIBLE TO ACCEPT EMPLOYMENT IN THE UNITED STATES?  ☐ Yes  ☒ No

Are you under 18?  ☐ Yes  ☒ No

**Source of referral**
☐ Ad
☒ Employee
☐ Other (specify) _____

Have you ever been employed by Boscov's?   ☐ Yes  ☒ No

If "Yes", under what name were you employed?: _____
Position _____ Department _____
Dates of previous employment: From _____ To _____

Do you have any relatives working at Boscov's?   ☐ Yes  ☒ No

If "Yes", Give Name, Relationship and Department. _____

**TYPE OF WORK DESIRED:**  Cashier
("Any" is not acceptable) (Up to 2 Choices only)
Any

☐ SALES     ☐ CASHIER
Name a specific department

☐ HER     ☐ STOCK
Name a specific department

**TYPE OF SCHEDULE**
(Check only 1)
☒ FULL-TIME  ☐ PART-TIME  ☐ FLEXIBLE
I am available to work on the following days and times.

| | Sun. | Mon. | Tues. | Wed. | Thurs. | Fri. | Sat. |
|---|---|---|---|---|---|---|---|
| | 9 | 9:30 | 3:30 | 9:30 | 3:30 | 9:30 | 9:30 |
| | 9:30 | 3:30 | 3:30 | 3:30 | 9:30 | 9:30 | 9:30 |

Date you are available to start work: Immediately
Expected earnings: 7.00 /hrs.

## TO BE COMPLETED AFTER EMPLOYMENT

| | | FROM | TO |
|---|---|---|---|
| Date of Birth | 07/06/61 | | |
| Spouse's Name & S.S. # | Kevin Wilson | | |
| Spouse's Employment | | | |
| Address: | Kevin Wilson | | |
| In Case of Emergency Notify: | | | |
| Telephone: | 395 4854 | | |

Interviewers Comments: _____

### FOR OFFICE USE ONLY

| | | | |
|---|---|---|---|
| Client #. | 0003 | Education Code | D |
| Store #. | 0072 | Date of Birth | 07 06 61 |
| Sex | F | Clsthp (1-9) | |
| Starting Date | 10/20/03 | Dep. Children | 02 |
| Starting Rate | 7.25 | Disability | N |
| Marital Status: | M | Employee Type | T |
| Dept. # | 030a | Normal Hours | 25 |
| I. Rel. Code | | Job Code | 82410010 |
| E.E.O. Code | 1 | Discount # | 14768 |

DEPOSITION EXHIBIT
PENGAD-Bayonne, N.J.
S. Wilson 20
Date 10-7-05
Affidavit B

A-0059

3-17-2004 01:27 PM   BOSCOVS                    30?   4  1108              P.04

*Boscovs*

| | | | |
|---|---|---|---|
| **JOB TITLE:** | 8210 BASIC SALES/STOCK | **GRADE OR LEVEL:** | N/A |
| **DEPT/DIVISION:** | ALL SELLING DEPARTMENTS | | |
| **DATE COMPLETED:** | OCTOBER 2000 | **SUPERCEDES (DATE):** | MAY 1996 |
| **FLSA STATUS:** | NON-EXEMPT | **JOB LOCATION:** | ALL STORES |
| **REPORTS TO:** | DEPARTMENT/AREA MANAGER | | |

**A. BASIC FUNCTION**

Salespeople are responsible for selling merchandise, providing customer service by fulfilling customers' merchandise needs and maintaining the appearance of selling floor and stock area. May be called upon at the discretion of management to perform comparable duties of a similar or related nature and/or assist in other areas where staffing shortages exist.

**% Time Spent**

**B. ESSENTIAL JOB FUNCTIONS/MAJOR TASKS**

1. Provide customer service as per company standards (i.e., greet & acknowledge customers, solid product knowledge & all other components of customer service), accurately and efficiently complete all sales transactions by adhering to all company policies & procedures including pricing and loss prevention, bag/package merchandise and maintain an awareness of advertisements; open new Boscov's charge accounts to achieve goals set by the company. ... 60%

2. Maintain stock by assisting in receiving, folding, straightening, and replenishing merchandise. ... 25%

3. Accurately complete paperwork (i.e., POS terminal procedures, new charge accounts, rainchecks, and special orders). ... 15%

**OTHER JOB FUNCTIONS**

- Open and close the department and the POS terminal
- Transfer of merchandise, price changes, counts, order new price tickets and merchandise sale signs
- Take annual inventory, cycle inventories
- Assist in floor moves, setup/breakdown of sales promotion merchandise and basic store housekeeping (i.e., cleaning shelves, dusting)
- Attend training sessions (i.e., safety, customer service, product knowledge, inventory) and meetings (i.e., roundtable, storewide meetings, departmental)

**C. PHYSICAL DEMANDS/WORKING CONDITIONS** ✳

| | | | | |
|---|---|---|---|---|
| Standing | Stooping | Bending | Reaching | Climbing |
| Twisting/Turning | | Lifting/Carrying (up to 50lbs) | | |

**D. QUALIFICATIONS/PREREQUISITES**

(1) SKILLS
Communication: verbal, written and by telephone with coworkers, management, and customers. Possesses basic math skills. Able to read and follow directions. Ability to learn selling skills and to operate a POS terminal and telxon. Ability to work well with the public and varied hours/days as business dictates.

(2) EMPLOYMENT EXPERIENCE (KIND & AMOUNT)
Prior retail and/or selling experience preferred.

(3) EDUCATION (GENERAL LEVEL REQUIRED OR SPECIFIC COURSES)
High School diploma or equivalent

**E. SUPERVISORY REVIEW AND APPROVAL:** _~~signature~~_   **DATE:** _10-31-00_

**HUMAN RESOURCES REVIEW AND APPROVAL:** _____   **DATE:** _____

MW/0340                    Affidavit _B_

A-0060

_**AVAILABILITY FORM**_     NIGHT

CLASS

CO-WORKER'S NAME  Melinda Wilson _____ PHONE NO. (981-3079

DEPT. 0306 - Womens _ SS#_____ DISC. # 148768

The purpose of this form is to assist Management, Department Managers, and the Staff Scheduler in the preparation of Departmental Staff Sched-ules. As discussed with you during the interviewing process, all full-time and flex schedules will include 2 evenings, hours on Saturdays, and alternate Sundays. Part time positions will include at least 3 evenings, hours on Saturday, and alternate Sundays. You have been hired as an:

POS. EMPL. TYPE  Temp ____ with a _weekly_ schedule of ___ 15 ___ to ___ 25 ___ hours.

_daily_ schedule of ___ 4 ___ to ___ 8 ___ hours.

SCHEDULING SYSTEM TYPE (✓) ____ FULL TIME,  __X__ PART-TIME, ____FLEX

Should there be a day or time that you are not available, on a regular basis, please indicate below i.e., a standing doctor's appointment, class or music. Please note: _Special requests_ for time off are to be arranged with your Department Manager and/or Supervisor.

_INDICATE ANY TIME THAT YOU ARE ~~NOT~~ AVAILABLE TO WORK_

| DAY: | TIME: | DAY: | TIME: |
|---|---|---|---|
| SUNDAY | open to close | THURSDAY | 400 to close |
| MONDAY | open to close | FRIDAY | 400 to close |
| TUESDAY | 400 to close | SATURDAY | 400 to close |
| WEDNESDAY | 400 to close | | |

CO-WORKER SIGNATURE  Melinda Wilson  DATE  10/10/03

White: Staff Scheduler / Co-Worker's File
Yellow: Department Manager

MW/0341

Affidavit  B
Page 123 of 150

Exhibit 12

A-0061

P E R S O N A L    P R O F I L E    U P D A T E    MW/0342

CLIENT NUMBER: 0503    STORE NUMBER: 00072    SOCIAL SECURITY NUMBER: 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

BASIC DATA. TO BE VERIFIED AND UPDATED BY CO-WORKER. ENTER CORRECTIONS OR UPDATES ON LINE PROVIDED.

LAST NAME: WILSON    FIRST NAME: MELINDA    MIDDLE INITIAL: G

ADDRESS LINE 1: 28 ASHLEY DRIVE    CITY: NEW CASTLE    STATE: DE    ZIP CODE: 19720-

ADDRESS LINE 2:

FEDERAL TAX INFORMATION
(TO CHANGE, A W4 FORM MUST BE COMPLETED)

STATUS: MARRIED    EXEMPTIONS: 004    AMOUNT:    .00

EMPLOYMENT DATE: 10/20/03    DEPARTMENT: 0306    DISCOUNT NUMBER: 14876-8

T B - PERSONAL DATA. TO BE VERIFIED AND UPDATED BY CO-WORKER. ENTER CORRECTIONS OR UPDATES ON LINE PROVIDED.

SEX: FEMALE    MARITAL STATUS: MARRIED    SPOUSE NAME - FIRST: KEVIN    LAST: WILSON
                                          (IF MARRIED)

DISABILITY: NO    DATE OF BIRTH: 07/06/61    HOME PHONE: (302)981-3079    SPOUSE SSN: 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
                                                                          (IF MARRIED)

NUMBER OF DEPENDENT CHILDREN:    NAME OF DEPENDENTS    DEPENDENTS DATE OF BIRTH
(DEPENDENT CHILDREN ARE THOSE
CHILDREN LIVING AT HOME UNDER ____
THE AGE OF 19)    02    LAST NAME, FIRST NAME    MM/DD/YY

EMERGENCY DATA:

CONTACT NAME: KEVIN WILSON    LAST NAME, FIRST NAME    MM/DD/YY

ADDRESS:    SAME    LAST NAME, FIRST NAME    MM/DD/YY

CITY/STATE:    SAME    LAST NAME, FIRST NAME    MM/DD/YY

PHONE NUMBER: 3023954854    LAST NAME, FIRST NAME    MM/DD/YY

RELATIONSHIP: HUSBAND    LAST NAME, FIRST NAME    MM/DD/YY

EDUCATION:    COLLEGE GRADUATE

PLEASE REVIEW,
CORRECT, SIGN AND
RETURN TO HUMAN
RESOURCES- DAN CARTY

FOR HUMAN RESOURCE MANAGERS USE ONLY

EEO CODE: 1  PRIMARY JOB CODE: 8210 SECONDARY JOB CODE:

JOB TITLE: SALESPERSON    2ND TITLE:

JOB SALARY CODE: NONE

NORMAL HOURS: 25.00    EMPLOYMENT TYPE:    TEMPORARY
(CANNOT EXCEED 40.00)  (* INDICATES MISMATCH TO AGE OR NORMAL HOURS)

CITIZENSHIP (I-9): YES    UNDER AGE 18: NO
(ON FILE)

CO-WORKER SIGNATURE: *Melinda M Wilson*

Affidavit B
Page 124 of 150

A-0062