IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MELINDA WILSON,                          :
                                         :
            Plaintiff,                   :
                                         :
      v.                                 : Civil Action No. 05-73-JJF
                                         :
AMERICAN POSTAL WORKERS                  :
UNION, DELAWARE AREA LOCAL,              :
AFL-CIO, et al.,                         :
                                         :
            Defendants.                  :

_____

Melinda Wilson, Pro se Plaintiff.


Dale Bowers, Esquire, of LAW OFFICE JOSEPH J. RHOADES,
Wilmington, Delaware
Of Counsel: Peter J. Leff, Esquire, of O'DONNELL, SCHWARTZ &
ANDERSON, P.C., Washington, DC
Attorneys for Defendant American Postal Workers Union, Delaware
Area Local, AFL-CIO.

Colm F. Connolly, Esquire, United States Attorney and Patricia C.
Hannigan, Esquire, Assistant United States Attorney, Wilmington,
Delaware
Of Counsel: Donna G. Marshall, Esquire, of the United States
Postal Service, Eastern Area Law Office, Philadelphia, PA
Attorneys for Defendant United States Postal Service.

_____

**MEMORANDUM OPINION**




June 12, 2006
Wilmington, Delaware

Farnan, District Judge

Presently before the Court are Defendant American Postal Workers Union's ("the Union") Motion for Summary Judgment (D.I. 33) and Defendant United States Postal Service's ("USPS") Motion for Summary Judgment (D.I. 35) pursuant to Fed. R. Civ. P. 56(c). Plaintiff has not filed a response to either Motion.  For the reasons that follow, the Court will grant both Motions.

**BACKGROUND**

Plaintiff instituted this action pursuant to § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. §185, alleging that Defendant USPS unlawfully discharged her from employment and that Defendant Union breached its duty of fair representation to her.  The USPS discharged Plaintiff for working a second job at Boscov's, a department store, while on paid sick leave from the USPS.  According to information the USPS obtained from Plaintiff's co-workers and postal inspectors, Plaintiff would occasionally take sick leave at 3:00 pm and begin work at Boscov's as early as 3:18 pm.  Furthermore, Plaintiff's work at Boscov's was in contravention of medical restrictions she filed with the USPS.  Those restrictions had led the USPS to make a number of voluntary accommodations for Plaintiff, including permanently placing Plaintiff on "limited duty" in a position that did not require her to stand, lift more than ten pounds,

1

perform repetitive motion tasks, or work any shift other than the
day shift.

The USPS briefly suspended Plaintiff, then terminated her
employment.  According to the Notice of Removal sent to Plaintiff
by first-class mail on March 30, 2004, Plaintiff had violated the
Employee and Labor Relations Manual's prohibition on engaging in
gainful employment while on sick leave, the prohibition on
conflicts of interest in employment, and the requirement that
employees "conduct themselves during and outside of working hours
in a manner which reflects favorably upon the Postal Service."
(D.I. 34, at n. 5.)  The USPS sent another copy of the Notice of
Removal by certified mail, which Plaintiff received on April 6,
2004.

On April 6, 2004, Plaintiff contacted Steve Collins, the
President of the Union, who filed a grievance on her behalf on
April 16, 2004.  The USPS denied the grievance on the merits at
Step 1 of the grievance process.  It denied the grievance as
untimely at Step 2 on the grounds that the it was filed more than
fourteen days after Wilson received the Notice of Removal, a time
limit mandated by Article 15 of the Collective Bargaining
Agreement.  Plaintiff appealed the ruling to arbitration, where

she was again represented by Collins.  The arbitrator also denied the grievance as untimely.

Plaintiff has given conflicting testimony as to when she first received the Notice of Removal and as to what she represented to the Union regarding when she received it.  At the arbitration hearing, she testified that she did not receive the Notice of Removal until April 6, 2004, (D.I. 34 at A-12), though the USPS introduced a previous affidavit in which Plaintiff stipulated that she in fact received the Notice on or before March 31, 2004.  (D.I. 36 at A-23.)  In her deposition for this case, Plaintiff admitted that she had lied under oath at the arbitration hearing, and that she received the notice on March 31, 2004.  (Id. at A-13.)  Initially, Plaintiff maintained that she could not recall whether she had told Collins that she received the notice on March 31, 2004, (Id. at A-276), but later claimed to remember making a telephone call to inform Collins of the fact.  (Id. at A-14.)  However, she testified that Collins had told her that the time limit did not begin to run until she had signed for the certified mail delivery on April 6, 2004. (Id. at A-11.)

## DISCUSSION

## I. Standard of Law

3

Federal Rule of Civil Procedure 56(c) provides that a party is entitled to summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

In determining whether there is a triable dispute of material fact, a court must review all of the evidence and construe all inferences in the light most favorable to the non-moving party. Valhal Corp. v. Sullivan Assocs., Inc., 44 F.3d 195, 200 (3d Cir. 1995). However, a court should not make credibility determinations or weigh the evidence. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). To properly consider all of the evidence without making credibility determinations or weighing the evidence, a "court should give credence to the evidence favoring the [non-moving party] as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" Id. at 151.

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts. . . .   In the

4

language of the Rule, the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986).  However, the mere existence of some evidence in support of the non-moving party will not be sufficient to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the non-moving party on that issue.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).  Thus, if the evidence is "merely colorable, or is not significantly probative," summary judgment may be granted.  <u>Id</u>.

**II. Analysis**

Defendants separately contend that they are entitled to summary judgment because (1) the Union did not breach its duty of fair representation to Plaintiff, and (2) the USPS had just cause for firing Plaintiff.  The USPS adds that it is entitled to summary judgment because Plaintiff's grievance was untimely filed, making dismissal appropriate.  Because the Court concludes that Plaintiff has not presented a genuine issue of material fact with respect to whether the Union breached its duty of fair representation, the Court will grant Defendants' Motions for Summary Judgment.

When a Collective Bargaining Agreement ("CBA") mandates that any dispute be submitted to binding arbitration, the results of the arbitration are subject to very limited judicial review. DelCostello v. Int'l Bhd. Of Teamsters, 462 U.S. 151, 164 (1983). This is in accordance with the policies behind federal labor law, which was designed to promote the private settlement of disputes under collective agreements.   International Union v. Hoosier Cardinal Corp., 383 U.S. 696, 702 (1966).   Thus, before a plaintiff can recover for wrongful discharge in court, he must show some failure of the system of dispute resolution contemplated by the CBA.   See Vaca v. Sipes, 386 U.S. 171, 184-85 (1967).   For example, a plaintiff can look to judicial remedies if "the conduct of the employer amounts to a repudiation of [the exclusive remedial procedures established by the contract]." Vaca, 386 U.S. at 185.   More pertinent to this case, a plaintiff may also seek judicial enforcement of his rights under the CBA if the union, having the exclusive power to carry the grievance procedure through to completion, breaches its duty of fair representation to the plaintiff.   Id.; Del Costello, 462 U.S. at 164.   To prevail against either Defendant here, Plaintiff must prove not only that her discharge was contrary to the CBA, but

also that the Union breached a duty to her.  DelCostello, 462
U.S. at 165 (citations omitted).

"The duty of fair representation requires a union 'to serve
the interests of all members without hostility or discrimination
toward any, to exercise its discretion with complete good faith
and honesty, and to avoid arbitrary conduct.'"  Marquez v. Screen
Actors Guild, 525 U.S. 33, 44 (1998) (quoting Vaca, 386 U.S. at
177).  To prove a breach of the duty of fair representation,
then, a plaintiff must show that the union's conduct was
arbitrary, discriminatory or in bad faith.  Id.  A union's
actions breach the duty under the "arbitrary" prong if they "can
fairly be characterized as so far out of a 'wide range of
reasonableness' that [they are] wholly irrational or arbitrary."
Air Line Pilots Ass'n v. O'Neill, 499 U.S. 65, 77 (1991).  The
"wide range of reasonableness" standard allows the union to make
discretionary judgments and decisions without fear of liability
should those judgments ultimately be wrong.  Marquez, 525 U.S. at
45-46.

Furthermore, "mere ineptitude or negligence in the
presentation of a grievance by the union" is not the type of
conduct intended to be included under the "arbitrary" standard.
Findley v. Jones Motor Freight, Etc., 639 F.2d 953, 960 (3d Cir.

1981).  Rather, the rule is that "a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion . . . ."  <u>Vaca</u>, 386 U.S. at 191.

The standard for "discriminatory" conduct has been analogized to the standard for a violation of Title VII of the 1964 Civil Rights Act, which contemplates discrimination based on race, color, religion, sex or national origin.  <u>Farmer v. ARA Services</u>, 660 F.2d 1096, 1104 (6th Cir 1981).  The discrimination required to constitute a breach has also been characterized as "invidious".  <u>Carter v. United Food & Commercial Workers</u>, 963 F.2d 1078, 1080 (8th Cir 1992).

Finally, in order to constitute "bad faith," a plaintiff must show "intent to mislead" on the part of the union.  <u>Marquez</u>, 525 U.S. at 47.  A finding of bad faith constituting a breach of the duty of fair representation requires "substantial evidence of fraud, deceitful action or dishonest conduct."  <u>Humphrey v. Moore</u>, 375 U.S. 335, 348 (1964).

Plaintiff's complaint does not delineate precise grounds for her claim that the union breached its duty of fair representation.  She states only that "[t]he actions of the Union in failing to timely file the Step One grievance constituted a breach by the Union of its duty of fair representation owing to

8

Wilson." (D.I. 1 at 4.) The complaint contains no allegations with respect to any of the three prongs of the <u>Vaca v. Sipes</u> test, and Plaintiff has not filed a response to Defendants' Motions for Summary Judgments. The Court concludes that Plaintiff has not presented sufficient evidence "to enable a jury reasonably to find" that the Union breached its duty of fair representation to her. <u>Anderson</u>, 477 U.S. at 249.

The Union's conduct in filing the Step One grievance is not "so far out of a wide range of reasonableness" that it can be characterized as "arbitrary." <u>Air Line Pilots Ass'n</u>, 499 U.S. at 77. Nor can it be said to have ignored Plaintiff's grievance or treated it in a "perfunctory" manner. The Union processed the grievance and carried it through the entire appeals procedure, including a lengthy oral argument at arbitration. At the argument, Plaintiff was represented by the Union's President. The Union not only pressed the grievance on the merits, but also fought the USPS on the timeliness issue. The Union's failure to timely file the grievance can amount to no more than negligence, considering the two copies of the Notice of Removal sent to Plaintiff on different dates and the apparent confusion as to when the time limit for filing began to run. As discussed, negligence alone does not constitute arbitrariness.

Nothing in Plaintiff's complaint alleges that the Union's conduct was in any way discriminatory.  Plaintiff does not claim to have been subjected to invidious discrimination based on sex, race or national origin, nor does she present any evidence to that effect.  The Court therefore concludes that the Union's conduct in filing Plaintiff's grievance was not discriminatory.

Nor has Plaintiff put forth any evidence to indicate that the Union's conduct was fraudulent or deceitful so as to constitute bad faith.  In her deposition, Plaintiff stated that it was possible that the Union simply made a mistake.  (D.I. 36 at A-287-88.)  She represented her "understanding that Steve Collins had a belief that the time limits started running" on April 6, 2004.  (Id. At 287.)  She said that she had "no idea" whether Collins told her that the time limitation tolled on April 6, 2004 "purposefully or with bad intent."  (Id.)  On this evidence, the Court concludes that a reasonable jury could not find that the Union acted in bad faith when it failed to timely file Plaintiff's grievance.

## CONCLUSION

Because a reasonable jury could not find that the Union's conduct was arbitrary, discriminatory or in bad faith, the Court concludes that the Union did not breach its duty of fair

10

representation to Plaintiff as a matter of law.  As Plaintiff must prove a breach of the duty of fair representation in order to prevail on an unlawful discharge claim, it is unnecessary for the Court to discuss Defendants' alternate defenses.  For the reasons discussed, the Court will grant both Defendants' Motions for Summary Judgment.

An appropriate order will be entered.